## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DEANDRE ALBERT MARTIN,

     Petitioner,

v.

MICHAEL BURGESS,

     Respondent.

_____/

Case No._____
Hon. _____

## PETITIONER DEANDRE ALBERT MARTIN'S
## PETITION FOR WRIT OF HABEAS CORPUS

NOW COMES Petitioner DEANDRE ANDRE MARTIN ("Petitioner"), by and through his attorney, REJANAE M. BROOKS, and pursuant to 28 U.S.C. § 2254 moves this Honorable Court to grant him a writ of habeas corpus, and states as follows, in support thereof:

1. Petitioner is a citizen of the United States and is currently being unconstitutionally held at a Michigan Department of Corrections ("MDOC") facility in Manistee, Michigan.

1

2. Venue is proper in this Court as Petitioner was convicted in Wayne County, which is in the Eastern District of Michigan.

3. On April 9, 2018, Petitioner was convicted of one count of second-degree murder and felony firearm following a bench trial.

4. On April 25, 2018, Petitioner was sentenced to 22 years to 40 years imprisonment for the second-degree murder conviction, in addition to a consecutive term of 2 years imprisonment for the felony firearm conviction.

5. This petition is brought within the one-year statute of limitations pursuant to 2244(d)(1)(A).

6. Petitioner has exhausted all state court remedies with regard to the constitutional issues presented herein.

7. Petitioner has not filed any other petition for a writ of habeas corpus, attacking the current judgment, in this or any other federal district court.

8. Petitioner's convictions and sentences are a result of the following constitutional violations:

## ARGUMENT

## I.

**Trial court counsel's wholesale failure to interview any of the prosecution's civilian, expert or law enforcement witnesses amount to a complete failure to meaningfully investigate and did this preclude counsel from the subjecting the prosecution's case to meaningful adversarial testing.**

## Discussion

The adversarial testing process collapsed because Petitioner was represented by an attorney who completely neglected to fulfill his constitutional and ethical obligation to investigate and interview witnesses. Petitioner's trial court counsel never bothered to investigate or interview a single civilian, expert, or law enforcement prosecution witness before trial. The wholesale failure to prepare to subject the prosecution's case to meaningful adversarial testing prohibited Petitioner's counsel from formulating a real trial strategy. Without conducting any investigation into the prosecution's case, Petitioner's counsel could not

assess the strengths and weaknesses of the prosecution's case. Since counsel never meaningfully investigated the prosecution's case counsel ultimately blindly advised Petitioner to relinquish his fundamental right to trial by jury and instead proceed with a bench trial. It was impossible for Petitioner to have knowingly, intelligently, and voluntarily relinquished his fundamental right to be tried by 12 individual jurors and instead a single judge where his counsel completely failed to engage in routine preparation by simply investigating and interviewing the prosecution's civilian, expert, and law enforcement witnesses. A presumption of prejudice is mandated.

## Analysis

The Supreme Court has held that the essence of the Sixth Amendment right to counsel is: "[T]o have him investigate the case and prepare a defense for trial." *Michigan v. Harvey*, 494 U.S. 344, 348 (1990) (citing *Powell v. Alabama*, 287 U.S.45, 58, 71 (1932)). In *Kimmelman v. Morrison*, 477 U.S. 364 (1986), the Supreme Court held that the adversarial "testing process generally will not function properly unless defense counsel has done some investigation into the prosecution's case [.]"Id. at 415-416. The Supreme Court has displayed

4

zero tolerance for attorneys who have "abandon[ed] their investigation at an unreasonable juncture, making a fully informed decision with respect to [trial] strategy impossible," Wiggins v. Smith, 539 U.S. 510, 527 (2003), especially when "counsel did not even take the first step of interviewing witnesses[.]" *Porter v. McCollum*, 130 S. Ct. 447, 453 (2009)..

Prior to trial, the prosecution provided counsel with notice of all of its civilian, expert, and law enforcement witnesses to enable counsel to investigate and interview the witnesses. Despite having notice of these witnesses, counsel did not interview a single civilian, expert, or law enforcement witness. In this case, although trial court counsel had the obligation to investigate and interview witnesses during the critical pre-trial investigative stage of the case, see *Mitchell v. Mason*, 325 F.3d 732, 743 (6th Cir 2003) ("The pre-trial period constitutes a 'critical period' because it encompasses counsel's constitutionally imposed duty to investigate the case."), trial court counsel did nothing meaningful to prepare to subject the prosecution's case to meaningful adversarial testing. (See e-mail correspondence from attorney Kareem Johnson, dated 9-12-19, attached as Exhibit A.

There is no dispute that "courts are generally reluctant to accept something as stark as not investigating[.]" *Phillips v. White*, 851 F.3d 567, 579

(6th Cir 2017). A complete failure to investigate warrants the presumption of prejudice pursuant to *United States v. Cronic*, 466 U.S. 648 (1984). The Sixth Circuit in *Carter v. Bell*, 218 F.3d 581 (6th Cir 2000) held that counsel's "complete failure to investigate" permits the presumption of prejudice pursuant to *Cronic*, Id. at 595 (citing *Rickman v. Bell*, 131 F.3d 1150 (O Cir 1997)) ("the complete failure to investigate is below an objective standard of reasonable representation and may in fact be so severe as to permit us to infer prejudice.").

In the case at bar, when trial court counsel "neglected to conduct any investigation at all he ceased functioning as counsel under the Sixth Amendment." *Phillips*, 851 F.3d at 579. The fact that trial counsel was able to freestyle throughout trial means nothing. The Supreme Court in Kimmelman, held not even "defense counsel's vigorous cross-examination, attempts to discredit witnesses, and efforts to establish a different version of the facts," during trial could "lift counsel's performance back into the realm of professional acceptability." *Kimmelman*, 477 U.S. at 383-386. see also *Carter*, 218 F.3d at 589 (6th Cir 2000) ("justice requires that counsel must do more than appear or argue to the jury.").

Reversal is required because counsel's complete failure to investigate and interview witnesses prevented counsel from being able to subject the prosecution's case to meaningful adversarial testing.

**(1)**

**Petitioner was severely prejudiced by counsel's complete failure to investigate and interview witnesses.**

The Court in *Romanez v. Berghuis*, held that: "Constitutionally effective counsel must develop trial strategy in the usual sense not what bears a false label of 'strategy'—based on what investigation reveals witnesses will actually testify to, not based on what counsel guesses they might say in the absence of a full investigation." 490 F.3d 482, 489 (6th Cir, 2007). Without investigating or interviewing a single prosecution civilian, expert, or law enforcement witness counsel could not meaningfully formulate a strategy of any kind.

**(2)**

**Petitioner could not knowingly, intelligently, and voluntarily waive his right jury trial.**

Despite not knowing what his client was up against, due to his complete failure to investigate and interview a single witness, counsel advised Petitioner to waive his fundamental right to trial by jury. (Trial Transcript, hereinafter

"T," 3218,3) (MR. JOHNSON: Yes. 1 have spoken to my client, Mr. Martin. I've spoken to the assistant prosecuting attorney, Ms. Tusar. We're in agreement. We're asking this Court to consider hearing this matter as a bench trial.").

Without doing any investigation into the prosecution's case, counsel was ill equipped to urge Petitioner to relinquish his fundamental right to trial by jury and proceed with a bench trial. Deciding whether to try a case before a panel of 12 individual jurors or before a single judge requires extremely intensive strategic considerations before a final decision could be made. Counsel was completely unable to make such strategic decisions without first investigating the prosecution's case. A meaningful investigation requires for more than merely reading papers from the prosecution's file. See e.g., *Anderson v. Johnson*, 38 F.3d 382, 392 (9 Cir. 2003) (finding a trial attorney is constitutionally deficient where he was "relied exclusively on the investigative work of the State and based on his own pretrial 'investigation' on assumptions divined from a review of the State's files").

Petitioner was severely prejudiced in this regard because without his counsel never engaging in an assessment of the strengths and weaknesses of the prosecution's case by investigating and interviewing witnesses Petitioner

was illadvised. "In order for a jury trial waiver to be valid, it must be both knowingly and voluntarily made." *People v. Cook*, 285 Mich App 420, 422 (2009) (citing MCR6.402)); *People v. Godbold*, 230 Mich App 508, 512 (1998)). Without knowing anticipated witnesses' testimony (due to a complete failure to investigate) counsel could not legitimately assess the strengths and weaknesses of the prosecution's case and could not convey the strengths and weaknesses to Petitioner which rendered the waiver of trial by jury unknowingly and unintelligently made. Had Petitioner known of the strengths and weaknesses of the prosecution's case he would not have waived his right to trial by jury. Counsel's blind advice to Petitioner resulted in the blind leading the blind. Ultimately Petitioner's waiver of trial by jury was invalid which requires automatic reversal. "In the case at bar, Petitioner was denied his Sixth Amendment right to a jury trial because [ I trial court [counsel's deficient performance prevented] a valid jury waiver." *Cook*, 285 Mich App at 426-427. Harmless error analysis is inapplicable, instead structural results from an unknowingly entered jury trial waiver:

> "If we were to conclude that this error was harmless, we would have to speculate about whether a hypothetical jury would also have found Petitioner guilty. Even if we were persuaded that a hypothetical jury would likely—or even certainly—find Petitioner guilty beyond a reasonable doubt, the Sixth Amendment requires more than appellate speculation

9

> about a hypothetical jury's action …' *Id* at 280. Therefore, we conclude that a constitutionally invalid jury waiver is a structural error that requires reversal."

*Cook*, 285 Mich App at 427.

It is impossible to conclude that Petitioner knowingly and intelligently waived his right to trial by jury where his counsel was not in a position to impart the germane information and advice to Petitioner to permit the execution of a knowing and intelligent waiver. Reversal is a must.

**(3)**

**Dr. Sung could have offered defense favorable testimony to contradict the prosecution's theory.**

The dispositive question here was whether Petitioner shot Mr. Moore accidentally during the course of a struggle over the weapon or whether Mr. Moore was intentionally shot after Petitioner leveled the gun pointing it directly at Mr. Moore and then firing. At trial the prosecutor argued that Petitioner intentionally leveled the gun and pointed it directly at Mr. Moore before shooting. (T 4-5-18, 5) ("at which time the Petitioner and the victim start struggling, and the Petitioner raised that weapon, and he shot him.") The prosecutor set out to establish that the shooting was intentional by calling witnesses (all of which were related to or closely aligned with Mr. Moore) to

testify that the gun was fired while it was leveled pointing directly at Mr. Moore. The prosecution called Roshowandra McGowan (Mr. Moore's mother) who conveniently added a new detail to her version of events, by asserting that the weapon was fired after the gun was leveled and pointed directly at Mr. Moore. (T 4-5-18, 34) "As I was finally jumping out of the truck, he raised it, and I saw Deandre raise the weapon. I saw a flash, and my son was shot."). Although Ms. McGowan initially testified that the weapon was no leveled and pointed directly at Mr. Moore, but instead it was pointed downward, (T 4-5-18, 33) (BY MS. ERIKA TUSAR: (Assistant Prosecuting Attorney) "Q: And how was the weapon angled? A: It was just down."), and Ms. McGowan conceded that she never told the police that Petitioner leveled the gun and directly pointed it at Mr. Moore before firing the weapon, (T 4-5-18, 48-49) (BY MR. JOHNSON: "Q: Would looking at your statement refresh your memory as to whether or not you put that in your statement? A: I reviewed the statement, and I guess I overlooked it when I read it because I remember but my emotions and stuff, I guess that's why I didn't say all of that."), she maintained that the weapon was raised and pointed directly at Mr. Moore before the shot was fired. (T 4-5-18, 48) (BY MR. JOHNSON: "Q. Now you testified today that you saw Mr. Martin raise the weapon and fire the shot; Correct? A: Yes.").

The prosecution also called Lakeisha Vance (Mr. Moore's godmother) who although she testified that "there wasn't any malice," and she didn't see any malicious intention prior to the shooting," (T 4-55-18, 87), claimed that she saw Petitioner "lift [ ] his hand up and shot him." (T 4-5-18, 69); (T 4-5-18, 70) ("He lifted it and shot Al.") Alexis Layne was also called to testify' that the gun was raised. (T 4-5-18, 1 14) ("I seen him raise the gun,"). The prosecutor continued during closing argument that "the Petitioner raises that weapon, and it goes off." (T 4-5-18, 148).

While the prosecution's theory was that the shooting was intentional, Petitioner maintained that the shooting was accidental. Counsel advanced "we are here because we intend to show to this Court that the killing of Mr. Moore was an accident." (T 4-5-18, 6). To demonstrate that the shooting was an accidental close-range shooting that occurred during the course of a struggle counsel emphasized that there was no evidence of close range shooting because Mr. Moore had clothing on at the time in question and "the medical examiner [did not] get the clothes[.]" (T 4-5-18, 9). Counsel also promised the Court that he would produce "testimony about how this was a close-range fire." (T 4-5-18, 10). Of course, "it is basic that the court sitting as fact finder may not consider matters in [ ] argument not supported by evidence at trial."

12

*Matthews v. Abramajtys*, 92 F.Supp.2d 615, 636 (E.D. Mich., 2000), afd 319 F.3d 780 (6th Cir. 2003). With that counsel's arguments amounted to empty promises.

Despite indicating that the shooting was accidental and promising to produce evidence that this was a close-range shooting, in support of the theory that the shooting occurred during an up-close struggle between Petitioner and Mr. Moore, counsel did not do anything. Without ever consulting Dr. Sung about his findings after he performed the postmortem examination of the body of Mr. Moore counsel agreed to waive the prosecution having to produce Dr. Sung and insisted blindly that the toxicology report, and the photographs of the gunshot wound would suffice.

Counsel's failure to contact Dr. Sung — a known witness who performed the postmortem examination of Mr. Moore — was indisputably constitutionally deficient. See e.g., *People v. Ackley*, 497 Mich 381 (2015) (counsel's failure to engage expert testimony to rebut prosecution's case constituted a constitutional flaw in the representation and not reasonable strategy entitling Petitioner to a new trial); *Dando v. Yukins*, 461 F.3d 791 (O Cir. 2006) (Petitioner was denied her right to effective assistance of counsel by trial court counsel's failure to consult an expert); *Richez v. Bradshaw* (On

Remand), 498 F.3d 344 (e Cir. 2007) (counsel was ineffective for failing to conduct an investigation that a reasonably competent lawyer would have conducted into an available defense of accident). In this case, without ever attempting to speak to Dr. Sung, counsel could not make a strategic decision not to call Dr. Sung as a witness. See *Ramonez*, 490 F.3d at 488 ("the central teaching of *Strickland*, . . . [is] that the investigation leading to the choice of a so-called trial strategy must itself have been reasonably conducted lest the 'strategic' choice erected upon it rest on a rotten foundation.") (Citing *Towns v. smith*, 395 F.3d 251, 258 (6th Cir. 2005).

Petitioner was severely prejudiced because had counsel consulted Dr. Sung, counsel would have learned that the prosecution's own expert opined that the trajectory of the wound track was wholly inconsistent with the weapon being leveled and pointed directly at Mr. Moore when the weapon was fired. Counsel would have learned that Dr. Sung opines that the trajectory of the wound track was consistent with the weapon being pointed in a downward position which is supportive of Petitioner's position that the weapon was accidentally fired. (See Affidavit of David Moffitt, attached as Exhibit B). Had counsel consulted Dr. Sung he would have also learned that Dr. Sung could verify that the fact that Mr. Moore had on clothing at the time he sustained the

14

gunshot wound could have contributed to there being no evidence of close-range firing being found on Mr. Moore's skin. In other words, Dr. Sung would have verified that the fact that there was no gunshot stippling around the wound was not conclusive evidence of lack of close-range firing (Exhibit C).

There is a reasonable probability that the outcome of the trial could have been different had Dr. Sung testified that the trajectory of the wound tract to Mr. Moore's body was inconsistent with the witnesses' testimonies that the gun was fired while being leveled and pointed directly at Mr. Moore. It was noted multiple times during rendering of the verdict that the witnesses testified that the weapon was fired while the weapon was leveled and pointed directly at Mr. Moore. (T 4-918, 6) (referring to Ms. McGowan's testimony: "That she saw the flash of the gun when the gun was raised by Mr. Martin."); (T 4-9-18; 6) (Ms. Vance indicated that she saw Mr. Martin with his arm outstretched during the course of the argument and she also saw the fire that came from the weapon."); (T 4-9-18, 67) ("Alexis Layne testified that she heard the yelling between Mr. Martin and Mr. Moore, and she saw Mr. Martin raise the gun, and there was the gunshot."); (T 4-9-18, 8) ("In this particular case there are multiple witnesses who indicate that Mr. Martin had his arm outstretched, that he did have distance from Mr. Moore,").

Dr. Sung's testimony that it was impossible for the weapon to have been fired while Petitioner's arm was outstretched could have undermined these witnesses' testimonies. Dr. Sung's testimony could have proved that Mr. Moore's family and friends were embellishing their testimonies when they testified that the Petitioner leveled the gun and pointed it directly at Mr. Moore before shooting. Dr. Sung's testimony that the trajectory of the wound track was consistent with Petitioner's version of events that the weapon was accidentally discharged while pointing downward (consistent with the downward angle of the wound track) could have changed the outcome of the trial.

Petitioner was prejudiced due to counsel's failure to consult Dr. Sung who could have contradicted the prosecution's theory and supported Petitioner's accidental defense. While Petitioner submits that Dr. Sung's testimony could have persuaded the trial court judge to vote differently, that is not the standard to assess whether there is a reasonable probability that the outcome of the trial could have been different. The Court's decision in Smith v. Warden, Toledo Corr Inst., is instructive:

> "The trial court's comments at the end of the posttrial hearing, which provide the only explanation in the record for why it is denied the new trial motion, suggest that it misconstrued Brady. The court told

16

counsel, 'you might have an argument if you're trying it to a jury, but you're trying the case tome, and I'm also deciding this motion for new trial. I have no doubt that both these guys were involved in this.' ***The relevant questions, however, was not whether the trial judge would have voted to convict regardless of the new evidence. The question was instead whether there was a reasonable probability that a generic, reasonable fact-finder would have had a reasonable doubt if she knew of the withheld DNA lab notes.*** To the extent that the court's comments can be taken as a statement of its reasons for denying the motion, it likely abused its discretion by misapprehending and misapplying Supreme Court precedent."

2019 U.S. App LEXIS 18196 at    (6th Cir, June 18, 2019) (emphasis added).

Had counsel consulted Dr. Sung and Dr. Sung's favorable testimony been presented to contradict the prosecution's theory and supported Petitioner's defense, there is a reasonable probability that the outcome of the trial would have been different, Reversal is required. See e.g. *Palazzolo v. Burt*, 778F.Supp.2d 805 (ED Mich 2011) (finding that Petitioner showed a reasonable probability that the outcome of his bench trial conviction would have been different absent trial counsel 's ineffectiveness).

## ARGUMENT

## II.

**Petitioner suffered a complete deprivation of counsel from February 1, 2018, to February 8, 2018, which was after the commencement of the**

**judicial proceedings and during the critical pretrial investigative state of the proceedings; therefore, automatic reversal is mandatory.**

## Discussion

Clearly established precedent mandates reversal because Petitioner was left completely unrepresented during the critical pretrial state. Petitioner was left without any form of counsel from February 1, 2018, to February 8, 2018. Petitioner's then attorney Randall P. Upshaw moved to withdraw from the case on February 1, 2018. Mr. Upshaw's motion was granted, and he was allowed to withdraw on the spot. No one was substituted in Mr. Upshaw's place leaving Petitioner completely without any counsel. It was not until February 8, 2018, when Petitioner received new counsel, to wit: Kareem Johnson. Petitioner was left without any representation during the pretrial investigative state of the case which is a critical state of the judicial proceedings. The presumption of prejudice is warranted.

## Analysis

The Supreme Court in *Powell v. Alabama* made it clear that a criminal Petitioner "***requires the guiding hand of counsel at every step in the proceedings against him***." 287 U.S. 45, 69 (1932) (emphasis added). The Supreme Court has declared that:

18

"The constitutional guarantee applies to pretrial critical stages are part of the whole course of a criminal proceeding, a proceeding in which Petitioners cannot be presumed to make critical decisions without counsel's advice."

Laflerv. Cooper, 132 s.ct. 1376, 1385 (2012).

The Supreme Court has described the pre-trial period as:

"[P]erhaps the most critical period of the proceedings against these Petitioners, that is to say, from the time of their arraignment until the beginning of their trial, when consultation, thoroughgoing investigation and preparation were vitally important."

Powell, 287 U.S. at 57. See also *Mitchell v. Mason*, 325 F.3d at 742 ("the pre-trial period is indeed a critical stage, the denial of counsel during which supports a Cronic analysis."); *People v. Dixon*, 263 Mich App 393, 397 (2004) (quoting Mitchell, 325 F.3d at 743) (pre-trial period constitutes a "critical period" because it encompasses counsel's constitutionally imposed duty to investigate the case). It is important to highlight that:

"[T]he 'critical stage' at which counsel must be present are not limited to formal appearances before a judge."

Mitchell, 325 F.3d at 743 (citing *Bell v. Cone*, 535 U.S. 685 (2002).

In the case at bar, Petitioner suffered a complete absence of counsel from February 1, 2018, to February 8, 2018. On January 29, 2018, Petitioner's then attorney Randall P. Upshaw, filed a motion to withdraw as Petitioner's attorney. (See Register of Actions, 3rd Judicial Circuit of Michigan, attached as Exhibit D). The motion to withdraw was heard and decided on February 1, 2018. (Motion to Withdraw, Transcript, hereinafter, "MTWT," 2-1-18, 3) on. UPSHAW: Your Honor, I spoke with my client, and I filed a motion [to] withdraw as counsel."). Without receiving any input from Defandant, the trial court granted Mr. Upshaw's motion to withdraw as counsel and he was discharged then and there. (MTWT, 21-18, 4) ("TI-E COURT: All right. I'll allow you to withdraw.").

Since Mr. Upshaw was discharged, the trial court asked Petitioner whether his family was going to hire him another attorney. Petitioner confirmed that his family would. (MTWT, 2-1-18, 4). The trial court informed Petitioner that he would give him one week to obtain new counsel. Petitioner asked for additional time. The trial court denied the request. (MTWT, 2-1-18, 4).

Since Mr. Upshaw was discharged without an immediate substitution of counsel of February 1, 2018, Petitioner did not have "the guiding hand of

20

counsel" all the way up until February 8, 2018, when new counsel Kareem

Johnson entered his notice of appearance. (Pretrial Conference Transcript,

hereinafter "PCT," 2-818,3) (B/R. JOHNSON: Good afternoon, your Honor.

Kareem Johnson on behalf of Deandre Martin. I have been recently retained.

I seek the Court to accept my appearance at this time.") This means that on:

- February 1, 2018, Petitioner had no attorney to consult with, no attorney to investigate the prosecution's case, no attorney to investigate his defense, no attorney to contact the prosecution to engage in plea negotiations, and no attorney to research his case.

- February 2, 2018, Petitioner had no attorney to consult with, no attorney to investigate the prosecution's case, no attorney to investigate his defense, no attorney to contact the prosecution to engage in plea negotiations, and no attorney to research his case.

- February 3, 2018, Petitioner had no attorney to consult with, no attorney to investigate the prosecution 's case, no attorney to investigate his defense, no attorney to contact the prosecution to engage in plea negotiations, and no attorney to research his case.

- February 4, 2018, Petitioner had no attorney to consult with, no attorney to investigate the prosecution's case, no attorney to investigate his defense, no attorney to contact the prosecution to engage in plea negotiations, and no attorney to research his case.

- February 5, 2018, Petitioner had no attorney to consult with, no attorney to investigate the prosecution's case, no attorney to

investigate his defense, no attorney to contact the prosecution to engage in plea negotiations, and no attorney to research his case.

- February 6, 2018, Petitioner had no attorney to consult with, no attorney to investigate the prosecution's case, no attorney to investigate his defense, no attorney to contact the prosecution to engage in plea negotiations, and no attorney to research his case.

- February 7, 2018, Petitioner had no attorney to consult with, no attorney to investigate the prosecution 's case, no attorney to investigate his defense, no attorney to contact the prosecution to engage in plea negotiations, and no attorney to research his case.

This demonstrates the epitome of Petitioner suffering a complete absence of counsel during the critical stage of the judicial proceeding for seven (7) days and the only remedy is automatic reversal. See *People v. Frazier*, 478 Mich 231, 243 (2007) (citing *Cronic*) ("the United States Supreme Court identified three rare situations in which the attorney's performance is so deficient that prejudice is presumed. One of these situations involves the complete denial of counsel at a 'critical stage' of the proceedings."); *Garza v. Idaho*, 139 S.Ct. 738, 744 (2019) (quoting Cronic) ("no showing of prejudice is necessary 'if the accused is denied counsel at a critical stage of his trial"); *Wright v. Van Pattern*, 128 S.Ct. 743, 746 (2008) (quoting *Cronic*) ("one circumstance warranting the presumption is the 'complete denial of counsel,'

that is when 'counsel [is] either totally absent, or prevented from assisting the accused during a critical stage of the proceeding'"); *Bell*, 535 U.S. at 695 (quoting *Cronic*) ("In *Cronic*… we identified three situations implicating the right to counsel that involved circumstances 'so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.' First, and obvious was the 'complete denial of counsel.' A trial would be presumptively unfair, we said, where the accused is denied the presence of counsel at 'a critical stage.' *Michigan v. Taylor*, 535 U.S. 162, 166 (2002) ("We have spared the Petitioner the need of showing probable effect upon the outcome, and have simply presumed such effect, where assistance of counsel has been denied entirely or during a critical stage of the proceeding. When that has occurred, the likelihood that the verdict is unreliable is so high that a case-by-case inquiry is unnecessary."); *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000) ("In *Cronic*, *Penson*, and *Robbins*, we held that the complete denial of counsel during a critical stage of a judicial proceeding mandates a presumption of prejudice.· · ").

Petitioner must be granted a new trial because he was completely denied counsel from February 1, 2018, to February 8, 2018. Mr. Upshaw should not have been allowed to be discharged without another attorney immediately substituting in his place.

A materially indistinguishable situation occurred in *Morse v. Trippett*, 102 F.Supp.2d 392, 411 (ED. Mich 2000), *reversed on other grounds*, 37 Fed. Appx. 96 (O Cir. 2002), also analyzed under *Cronic*. In *Morse*, the Petitioner was assigned counsel on September 10, 1991. His assigned counsel's motion for removal from the case was granted on October 21, 1991. Petitioner Morse was left unrepresented for eleven (11) days, until November 1, 1991, when the Michigan Court of Appeals issued its opinion affirming the petitioner's conviction. Id. The Court in Morse held that no prejudice need be proved:

> "Attorney Greene was appointed to represent Petitioner on his appeal of right to the Michigan Court of Appeals. On September 10, 1991, Attorney Greene filed in the Genesee County Circuit Court a Motion to Be Relieved as Counsel. That motion was granted on October 21, 1991. Petitioner's appeal remained pending until November 1, 1991, when the Michigan Court of Appeals affirmed his conviction. *People v. Morse*, No.131309 (Mich.Ct.App. Nov. 1, 1991). There is no indication that Petitioner knowingly waived his right to counsel, that he concurred in Attorney Greene's withdrawal, or that he was ever even advised that counsel had filed A motion to withdraw. Moreover, the record before the Court indicates that substitute counsel was never appointed.
>
> Therefore, from the date Attorney Greene's motion was granted until the Michigan Court of Appeals issued its opinion affirming Petitioner's conviction, Petitioner was without counsel.
>
> Where a petitioner is denied counsel on appeal in contrast to a claim that counsel was ineffective, 'it

is . . inappropriate to apply either the prejudice requirement of Strickland or the harmless-error analysis of *Chapman v. California*, 386 U.s. 18, 87 S. ct. 824, 17 L. Ed. 2d 705(1967)].' Id at 88. ***Where a petitioner was denied counsel altogether the petitioner need not prove that he was prejudiced by counsel's performance.*** *U.S. v. Cronic*, 466 U.S. 648, 659, 104 S. ct. 2039, 80 L. Ed,2d 657 (1984).

Therefore, Petitioner's absence of counsel on appeal establishes a Sixth Amendment violation of his "right to counsel."

*Morse*, 102 F.Supp.2d at 411 (footnotes omitted and emphasis added).

The error in this case resulted in Petitioner being deprived of having *"the guiding hand of counsel at every step in the proceedings against him. " Powell*, 287 U.S. at 69 (emphasis added).

## ARGUMENT

## III.

**After the presiding trial court judge reviewed the preliminary examination transcript, obtained Petitioner's criminal history, and learned that Petitioner was on federal parole at the time, he was disqualified from being the trier-of-fact and counsel was ineffective for failing to move to have the trial court judge recused.**

25

## Discussion

Petitioner's counsel's representation fell below an objective standard of reasonableness when he failed to move to disqualify the trial court judge from presiding as the trier-of-fact. Prior to trial the trial court judge entertained Petitioner's motion to quash which entailed having to review the preliminary examination transcripts. Precedent clearly establishes that once a trial court judge reads a preliminary examination transcript, the judge can be disqualified as being the trier-of-fact in a bench trial case. Counsel had the factual and legal basis to move for disqualification yet failed to do so prejudicing Petitioner.

## Analysis

On March 2, 2018, Petitioner accepted the *blind* advice of his trial court counsel to relinquish his fundamental right to trial by 12 individual jurors and instead proceed to have a single judge decide his fate by having a bench trial. (PCT, 3-2-18, 3-7). After the jury trial waiver, the presiding trial court judge entertained arguments from the defense and prosecution regarding Petitioner's motion to quash the bind-over on first-degree premeditated murder. (Motion Transcript, hereinafter "MT," 3-30-18). Defense counsel presented his argument, (MT, 3-30-18, 3-7), the prosecutor argued her position (MT 3-30-

18, 79), defense counsel replied and at the conclusion of the arguments, the presiding trial court judge announced that he had the preliminary examination transcript and had to review the transcript:

> "THE COURT: All right. *I have the transcript. I'll review it.* I'll give you my decision Monday morning."

(MT, 3-30-18, 10) (emphasis added).

Decision day came, on April 2, 2018. From the outset, the trial court judge announced that he had officially analyzed the preliminary examination testimony by reading the transcript:

> "THE COURT: All right.
>
> *I've had an opportunity to review the Exam transcript*, having heard arguments from both sides. In this case, the defense is moving to quash the charge of murder in the first degree.
>
> Pursuant to People versus Ramsey, found at 89 Michigan Appeal 468, a 1979 case, *the trial court is limited to a review of the Preliminary Examination transcript* and the four comers of that particular document."

(MT, 4-2-18, 3) (emphasis added).

The trial court judge proceeded to highlight his review and reliance on the preliminary examination transcript. (MT 4-2-19, 4) ("In looking at the four corners of the transcript. "); (MT 4-2-18, 5) ("There was testimony during the course of the Preliminary Examination [and] after reading the preliminary

27

examination transcript, although the trial court judge granted the motion to quash the first degree premediated murder charge, (MT, 4-2-18, 8) ("So I do find that there was abuse of discretion to bind the Petitioner over on murder in the first degree."), the trial court judge rejected Petitioner's request to reduce the charge to voluntary manslaughter, concluding that second degree murder was the appropriate charge:

> BY THE COURT:

> "With regards to the charge of voluntary manslaughter, I do think that there is no evidence that would indicate that the type of disagreement that arose, and that was with a question as to who was going to drive the deceased's mother home and whether or not the deceased's mother should get out of the Petitioner's car, was the type of action of the type of behavior that would cause an ordinary person to act rashly. There is no evidence to support that.
>
> So, I reject the defense' (sic) argument that it should be reduced to voluntary manslaughter. I will grant the defense' (sic) motion to quash the first-degree premediated murder count, and it will be reduced to murder in the second degree."

(MT, 4-2-18, 8-9) (emphasis added).

After reading the preliminary examination transcript to resolve the motion to quash, on April 3, 2018, the trial court judge indicated that he not only read the preliminary examination transcript, but that he learned of

28

Petitioner's criminal history and the fact that Petitioner was on federal parole at the time in question:

BY THE COURT:

> **"I** *did indicate that after reading the memos from both sides and my reading of the Exam transcript and being mindful of the Petitioner's criminal history and the fact that he was on federal parole at the time*, I indicated that my sentence would be two years on the felony firearm to be followed by a sentence of 18 to 30 years on the murder in the second-degree Count. That is right near the bottom of the guidelines in this case."

(MT, 4-3-18, 4) (emphasis added).

After the trial court became aware "*of the Petitioner's criminal history*" in addition to the fact that Petitioner "*was on federal parole at the time*, " Petitioner's trial court counsel should have moved to have disqualified the presiding trial court judge from also being the trier-of-fact at the upcoming bench trial. No reasonably competent attorney would allow the trier-of-fact to be keenly aware of the accused's criminal background and federal parole status, especially in a case in which the prospective credibility of the Petitioner was pitted against the credibility of the prosecution's witnesses. When Petitioner accepted his attorney's blind advice to proceed with a bench trial case, he did

not fathom that the trier-of-fact would become "mindful of the Petitioner's criminal history" or learn of the fact that Petitioner "was on federal parole at the time." Counsel was ineffective for failing to move to disqualify the trial court judge after he became aware of Petitioner's criminal history and federal parole status or seek to have the waiver of trial by jury withdrawn. The Michigan Court of Appeals in *People v. Wagner*, 114 Mich App 541 (1982), held that a waiver of a jury trial can be withdrawn:

> "As a general rule, and apart from statues limiting its authority, a court may permit the withdrawal of a waiver of the right to trial by jury or on motion or request, set aside such a waiver, if the request is timely made, unless the waiver has been acted upon."

*Wagner*, 114 Mich App at 558-559 (quoting 47 Am Jr 2d, Jury, 567, pp. 684-685).

Under the circumstances of the trial court judge learning of "*the Petitioner 's criminal history and the fact that he was on federal parole at the time* " only *after* Petitioner waived his right to trial by jury, there is no question that a reasonable trial court judge would have allowed Petitioner to withdraw his waiver or recused itself from being the trier-of-fact *had counsel made the request.*

To the added basis to permit withdrawal of the waiver or disqualification, dealing with the trial court judge repeatedly reviewing the preliminary examination transcript not only in connection with the motion to quash but also in connection with the plea offer process while the trial court judge should have thereafter recused himself *sua sponte*, see *People v. Dixson*, 403 Mich 106, 109 (1978) ("If a judge has suppressed inculpatory tangible evidence or a confession, and consulted the preliminary examination transcript in so doing, he might have a duty ***sua sponte*** to raise the question whether he should sit.") (Emphasis added), the blame can only be placed on Petitioner's trial court counsel because "the burden of moving to disqualify a judge who had read the preliminary examination transcript should be placed on the Petitioner." *Dixson*, 403 Mich at 109.

It is a foregone conclusion that the motion would have been granted, had counsel moved to disqualify the trial court judge not only on the basis of his being aware of "the Petitioner's criminal history and the fact that he was on federal parole at the time," but also on the basis that the trial court judge had analyzed the preliminary examination transcript multiple times after (and only after) Petitioner waived his right to trial by jury. In *People v. Ramsey*, 385 Mich 22 (1971), the Michigan Supreme Court established a bright-line rule that a trial

court judge who reviewed a preliminary examination transcript not properly admitted into trial is disqualified from being the trier-of-fact. In *Ramsey*, "[A]fter the Petitioner waived his right to trial by jury," he learned that the trial court judge who was also playing the role as a finder of fact had "looked" at the preliminary examination transcript. Ramsey "contend[ed] that the trial court committed reversible error in looking at the preliminary examination transcript while sitting as the finder of facts. *Ramsey*, 385 Mich at 223.

The Michigan Supreme Court noted that under certain limited circumstances, prior testimony from, for example, a preliminary examination, "'may be used by the prosecution whenever the witness giving such testimony cannot, for any reason, be produced at the trial, or whenever the witness has, since giving such testimony become insane or otherwise mentally incapacitated to testify.'" Ramsey, 385 Mich at 223-224 (quoting MCL 768.26) The Court also noted that

> "  Whenever any Judge shall have acted as Examining Magistrate in any case he shall not be assigned to the trial of that case, except with the expressed consent of counsel for all parties entered upon the record in open Court."

*Ibid.* (quoting Recorder's Court Rule No. 8). The Court went on to state:

> "The purpose of both the statute and the court rule is to preserve the rights of confrontation and cross examination and to prevent prejudice by the use of

32

evidence which is not in the record of the trial. *Barber v. Page* (1968), 390 U.S. 719 (88 S Ct 1318, 20 L Ed 2d. 255); *People v. Chapman*, 380 Mich 74 (1968). The only exception which is recognized is when it is not possible to produce a witness at the trial after a diligent effort has been made to secure the attendance of such witnesses. *People v. Hunley* (1946), 313 Mich 688; *People v. Hawthorne* (1940), 293 Mich 15. The present case does not fall within the statutory exception because the complainant, who was the sole witness to the alleged armed robbery, was available and did testify at the trial."

*Ramsey*, 385 Mich at 224.

The Court went on to highlight why reversal was mandatory based on the trier-of fact's reading of the preliminary examination transcript:

"[T]he policy behind this statute as expressed in both the United States and Michigan Constitutions is clear. It is to assure that an accused has a right to confront all of the witnesses against him in open court, and to have all of the evidence against him placed in the record at the trial. The revised Recorder's Court rules reinforce this policy. We, therefore, hold that the trial court committed reversible error when he viewed the transcript of the testimony taken at the preliminary examination while sitting without a jury as the trier of the facts in the case, the transcript not being placed in evidence as provided by the statute."

*Ramsey,* 385 Mich at 224-225 (footnote omitted).

The Court then outlined the bright-line rule which prohibits the trier of fact from even "looking" at the preliminary examination transcript:

33

"This case demonstrates the need for an absolute rule in this situation. There is no way to determine whether or not the trial court was prejudiced by 'glancing' at the transcript. In fact, it is difficult to determine precisely how much, if any, of the transcript was read by the court, or for what purpose. Therefore, in order to avoid problems of proof on this issue, we hold that as an absolute rule it is reversible error for the trial court sitting without a jury to refer to the transcript of testimony taken at the preliminary examination except under the exceptions provided by statute. A jury, if impaneled, would not be aware of the testimony taken at a preliminary examination except under the provisions of the statute. A trial judge, sitting at the trier of the facts, can assume no greater prerogatives than a jury if a jury were impaneled to determine the facts."

*Ra[1]msey*, 385 Mich at 225-226 (footnote omitted).

In *People v. Walker*, 385 Mich 596 (1971), the Michigan Supreme Court

affirmed the Michigan Court of Appeals' granting of a new trial holding that:

"A judge, the same as a juror, does not pass the required constitutional test of impartiality and should be excused for cause as a trier of fact in a non-jury

---

[1] The trial court assumed the role of the trier-of-fact on March 2, 2018, when the trial court accepted the waiver of counsel. Only after the waiver was executed, the trial court judge/trier-of-fact, on March 30, 2018 indicated his desire to analyze the preliminary examination transcript. Then on April 2, 2018, the trial court judge/trier-of-fact declared that he completed his analysis of the preliminary examination transcript. Then the next day on April 3, 2018, the trial court judge/trier-of-fact re-emphasized that he analyzed the preliminary examination transcript, and also became aware of Petitioner's criminal history and federal parole status at the time in question.

> criminal trial where, had a jury voir dire examination
> disclosed that any prospective juror possessed the
> information that the trial judge possessed before trial,
> that juror would have been excused by the trial judge
> for cause."

*Walker*, 385 Mich at 597.

In the case at bar, absent counsel's deficient performance, the trial court would have recused itself based on the plain language of Ramsey and Walker. The only thing Petitioner's trial court counsel had to do was ask the Court to recuse itself on the basis that the trial court after he became the trier-of-fact[l] repeatedly analyzed the preliminary examination transcript, leamed of Petitioner's criminal history, and learned of his federal parole status. Had Petitioner had a trial by jury,

the jury would not have been aware of the details contained in the preliminary examination transcript, Petitioner's specific criminal history, or Petitioner's federal parole status. Had a prospective juror revealed during *voir dire* that he or she was aware of the testimony from the preliminary examination, counsel would have moved to excuse the prospective juror. The same goes for had a prospective juror revealed that he or she was aware of the specifics of Petitioner's criminal history without such information being admitted into

evidence. Likewise, a prospective juror would have been excused had he or she learned of Petitioner's federal parole status before trial.

As the Michigan Supreme Court held in *Dixson*, "Defense counsel could have moved to disqualify the judge at that point but did not do so." 403 Mich at 109. If the grounds for disqualification could have been raised in *Dixson*, the grounds could have certainly been raised in the case at bar. In *Dixson*, after "a preliminary examination, the Petitioner was bound over to circuit court for trial on a charge of first-degree murder." *Dixson*, 403 Mich at 109. In circuit court, Dixson moved to quash the bind-over and the trial court "judge noted in his Order denying the Petitioner's motion that he had read the preliminary examination transcript." *Ibid*. Unlike in the case at bar — where Petitioner waived his right to trial by jury *before* the trial court judge/trier-of-fact read the preliminary examination transcript, learned of Petitioner's criminal history, and learned of Petitioner's federal parole — in *Dixson*, "[o]nly after the motion was denied did defense counsel waive the jury with full knowledge that the judge had read the transcript." Id at 109. Since the trial court judge read the preliminary examination transcript *before Dixson* waived his right to trial by jury and only after the motion to quash was denied *Dixson* sought a bench trial "with full knowledge that the judge had read the transcript," the Court

concluded that its "rule in *Ramsey* [did] not govern [that] case." In other words, since the trial court judge did not read the preliminary examination transcript after the jury trial waiver was executed and it assumed the role as trial court judge/trier-of-fact, there was no violation of *Ramsey*. The Court still concluded that "Defense counsel could have moved to disqualify the judge at the point but did not do so." Id at 109.

In the case at bar, Petitioner had the absolute right to have the trial court judge to recuse itself once the trial court judge/trier-of-fact read the preliminary examination transcript, learned of Petitioner's criminal history, and learned of Petitioner's federal parole status *after* the waiver of jury trial was executed. Had Petitioner Known that he was going to be having a trial with the trial court judge/trier-of-fact having analyzed the preliminary examination transcripts, obtaining the full extent of his criminal history, or becoming aware of his federal parole status Petitioner would have *never* proceeded with a bench trial. Moreover, had counsel informed Petitioner that he had the right pursuant to *Ramsey* and *Walker* to have the trial court judge/trier-of-fact recused Petitioner would have insisted that recusal be sought. Or he would have insisted pursuant to *Wagner* that his waiver of a jury trial be withdrawn had counsel informed Petitioner of such an option.

37

Reversal is required because absent counsel's deficient performance Petitioner would have withdrawn his waiver of jury trial and proceeded with trial by jury. Or at a minimum Petitioner would have sought recusal and been tried before another judge who had not read the preliminary examination transcript, obtained knowledge of his criminal history, or learned of his federal parole status. With a different trier-of-fact (whether a different judge or by 12 jurors) there is a reasonable probability that the outcome of the trial would have been different.

## ARGUMENT

## IV.

**The waiver of trial by jury was constitutionally invalid where the record shows Petitioner was misinformed that the burden of proof associated with a trial by jury only required the prosecutor to prove him "guilty" but not guilty beyond a reasonable doubt and the record is silent as to whether Petitioner actually understood the right to trial by jury because Petitioner was never asked if he understood.**

## Discussion

Petitioner's counsel's representation fell below an objective standard of reasonableness when he failed to move to disqualify the trial court judge from

presiding as the trier-of-fact. Prior to trial the trial court judge entertained Petitioner's motion to quash which entailed having to review the preliminary examination transcripts. Precedent clearly establishes that once a trial court judge reads a preliminary examination transcript, the judge can be disqualified as being the trier-of-fact in a bench trial case. Counsel had the factual and legal bases to move for disqualification yet failed to do so prejudicing Petitioner.

### Analysis

On March 2, 2018, after trial court counsel blindly advised Petitioner to waive his fundamental right to trial by jury and to instead proceed with a bench trial the trial court engaged in a colloquy with Petitioner that told him if he had a trial by jury they would only have to "decide whether or not the prosecutor had proven [Petitioner] guilty." The following is relevant:

> "THE COURT: Mr. Marlin, 1 want you to understand under the laws of the State of Michigan you have the absolute right to have a trial by jury where 12 people from the community would listen to the evidence, *and they would decide whether or not the prosecutor had proven you guilty.*"

(PCT, 3-2-18, 4) (emphasis added).

The trial court should have conveyed to Petitioner that if he proceeded with a trial by jury that they would have to "decide whether or not the

39

prosecutor had proven [Petitioner] guilty beyond a reasonable doubt[,]" but

Petitioner was only told that the burden of proof merely required the jury to

"decide whether or not the prosecutor had proven [Petitioner] guilty," without

speculating "beyond a reasonable doubt." While the burden of proof was

minimized and was erroneously conveyed to Petitioner with respect to a trial

by jury, the burden of proof was correctly conveyed to the Petitioner regarding

a bench trial:

> "You also have the right to have a trial by the Court, by (sic) me, without a jury where it would be my job to like a jury. I would listen to all of the evidence. ***Then I would decide whether or not the prosecutor had done her job in proving you guilty beyond a reasonable doubt.*** "

(PCT, 3-2-18, 5) (emphasis added).

The record clearly shows that Petitioner was affirmatively misled

regarding the burden of proof related to a trial by jury. Petitioner was

misadvised that if he chose to proceed with a trial by jury the prosecutor would

merely have to prove him "guilty" without proving guilt beyond a reasonable

doubt. But when Petitioner was told that if he elected to proceed with a trial by

the Court the burden of proof would be higher than the burden of proof he was

told was associated with a trial by jury. The trial court appropriately informed

40

Petitioner that the burden of proof for bench trials was the extremely high standard of "guilty beyond a reasonable doubt."

In addition to misadvising Petitioner regarding the burdens of proof related to trial by jury versus a trial by the Court, the record shows that Petitioner was never asked if he actually understood the right to a trial by jury. While the trial court asked Petitioner whether the trial court itself correctly understood that Petitioner wished to give up his right to trial by jury, the record shows that the trial court failed to ascertain whether Petitioner actually understood the right to trial by jury:

BY THE COURT

"Knowing that you have the right to have a jury trial, *am I correct in understanding you wish to give up that right and have the case decided by me without a jury?*

PETITIONER MARTIN: Yes."

(PCT 3-2-18, 5) (emphasis added).

While the above reflects that the trial court asked Petitioner "am I correct in understanding you wish to give up" the right to trial by jury and proceed with a bench trial, the record shows that the trial court never asked Petitioner whether he (Petitioner) understood the right to a jury trial. There is a significant

41

legal difference from a trial court judge *personally* understanding that a Petitioner wished to waive his right and a trial court judge ensuring that a Petitioner accurately understands the right the Petitioner seeks to waive. In other words, the question is not what the trial court said or understood but only what the accused said and understood, See *Akins v. Easterling*, 648 F.3d 380, 398 (6th Cir 2011) (quoting *United States v. Erskine*, 355 F.3d 1161, 1169-70 (9th Cir, 2004)) ("'The appropriate is what the Petitioner understood, not what the court said or understood'") (internal quotation marks omitted). And while the record does reflect that Petitioner confirmed that he wished to waive his right to trial by jury, this does not confirm that Petitioner actually understood the right and the inquiry was incomplete without specifically asking Petitioner if he actually understood the right he confirmed he wished to waive. *Cf Von Moltke v, Gillies*, 332 U.S. 708, 724 (1948) ("The fact that an accused may tell [the judge] that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility.").

Had the trial court asked whether he understood his right to trial by jury Petitioner would have expressed his lack of understanding due to the confusion instilled in him when he was erroneously informed that the burden of proof associated with a trial by jury was merely "guilty" but not "guilty beyond a

42

reasonable doubt." Even if the fact that Petitioner was never asked if he understood his right to trial by jury — is ignored — the information erroneously conveyed to him about the burden of proof only being that the jury would have to decide "whether or not the prosecutor had proven [Petitioner} guilty," renders the waiver invalid. Whether it is due to the fact that the record is silent as to whether or not Petitioner actually understood the right to trial by jury or because the record shows that he was affirmatively misled and could not have possibly accurately understood the right to jury trial, the waiver of trial by jury is constitutionally invalid and reversal is mandatory.

The Michigan Court of Appeals made it clear that: "A criminal Petitioner has a constitutionally guaranteed right to a jury determination that he is guilty ***beyond a reasonable doubt***." *Cook*, 285 Mich App at 422 (citing U.S. Const. Am VI; Const. 1963, art. 1, 20; *People v. Beans*, 463 Mich 623, 629 (2001)) (emphasis added). This is clearly not what was conveyed to Petitioner at the time of the waiver. Petitioner was only told that the jury could convict him if they determined that the prosecutor merely proved Petitioner "guilty" but not guilty beyond a reasonable doubt. "In order for a jury trial to be valid . . . it must be both knowingly and voluntarily made." *Cook*, 285 Mich App at 423 (citing MCR 6.402(B); *Godbold*, 230 Mich App at 512). Where Petitioner was

43

affirmatively misled concerning the burden of proof for a trial by jury, Petitioner's waiver was both unknowingly and involuntarily executed and reversal is required because this constituted structural error. *Cook*, 285 Mich App at 427 ("we conclude that a constitutionally invalid jury waiver is a structural error that requires reversal.").

## ARGUMENT

## V.

**Petitioner suffered ineffective assistance of appellate counsel and therefore has good cause for failing to raise the constitutional violations now set forth herein on direct appeal.**

## Discussion

Petitioner was deprived of his constitutional right to the effective assistance of appellate counsel on direct appeal. The ineffective assistance of appellate counsel satisfies "good cause" and excuses any failure to raise the foregoing issues on direct appeal.

## Analysis

The issues set forth within this pleading were available for appellate counsel to raise on direct appeal. Appellate counsel neglected to raise these significant, obvious and meritorious constitutional violations that could have

44

changed the outcome of the direct appeal. Counsel's omission of these significant, obvious, and meritorious constitutional violations, all of which are far stronger than the issues raised by counsel on direct appeal, constituted ineffective assistance of appellate counsel. Prejudice resulted because had these constitutional violations been raised on direct appeal, there is no question that at least one of them would have been found meritorious by the Court of Appeals and resulted in a different outcome.

A criminal Petitioner is guaranteed effective assistance of appellate counsel by the Due Process Clause of the United States Constitution (U.S. Const. Am. XIV). *Halbert v. Michigan*, 545 U.s. 605 (2005); *Evitts v. Luce*, 469 U.s. 387, 399-401; 105 S.Ct. 830; 83 L.Ed.2d 821 (1985).

"Cause" for excusing procedural default is established by proving ineffective assistance of appellate counsel. *People v. Reed*, 449 Mich 375, 378; 535 NW2d 496 (1995). Petitioner meets that standard for "cause." While an appellate attorney can winnow out the issues that the appellate attorney deems to be weaker issues, it is evident that the issues raised by appellate counsel were unsuccessful. The issues raised herein are markedly stronger constitutional violations, compared to some of the issues raised by appellate counsel on direct

appeal, and for this reason Petitioner received ineffective assistance of appellate counsel.

When an attorney presents one argument rather than another, a federal habeas corpus petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Caver v. Straub*, 349 F.3d 340, 348(6th Cir. 2003) (quoting *smith v. Robbins*, 528 U.s. 259, 289; 120 s.ct. 746; 145 L.Ed.2d 756 (2000)). Counsel's failure to raise an issue on appeal is ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. *Howard v. Bouchard*, 405 F.3d 459, 485 (O6th Cir.2005).

After analyzing the constitutional violations set forth herein, Petitioner submits that this Honorable Court should find that the constitutional violations raised herein are far more meritorious than the issues raised by counsel on direct appeal, and consequently conclude that Petitioner received ineffective assistance of appellate counsel.

Trial court counsel's wholesale failure to interview any of the prosecution's civilian, expert, or law enforcement witnesses amount to a complete failure to meaningfully investigate and did this preclude counsel from subjecting the prosecution's case to meaningful adversarial testing.

46

Petitioner suffered a complete deprivation of counsel from February 1, 2018 to February 8, 2018, after the commencement of judicial proceedings and during the critical pretrial investigate stage of the proceedings; therefore automatic reversal is mandatory. After the presiding trial court judge reviewed the preliminary examination transcript, obtained Petitioner's criminal history, and learned that Petitioner was on federal parole at the time, he was disqualified from being the trier-of-fact; counsel ineffective for failing to have the trial court judge recused.

Petitioner's waiver of trial by jury was constitutionally invalid where the record shows Petitioner was misinformed that the burden of proof associated with a trial by jury only required the prosecutor to prove him "guilty" but not guilty beyond reasonable doubt and the record is silent as to whether Petitioner actually understood the right to trial by jury because Petitioner actually understood the right to trial by jury because Petitioner was never asked if he understood.

Petitioner suffered ineffective assistance of appellate counsel and therefore has good cause for failing to raise the constitutional violations now set forth herein on direct appeal.

47

## RELIEF REQUESTED

WHEREFORE, for the foregoing reasons, Petitioner prays that this Honorable Court will enter an Order requiring such further and additional relief *inter alia*:

A. Respondent to appear and answer the allegations of this petition;

B. Grant Petitioner's Writ of Habeas Corpus and order that Petitioner be released from this unconstitutional incarceration.

Respectfully submitted,
/s/ *Rejanae M. Brooks*
Rejanae M. Brooks (P87501)
Attorney for Petitioner
National Appellate Clinic, LLC
24293 Telegraph Rd.
Southfield MI 48033

Dated: September 23, 2022

48

## CERTIFICATE OF SERVICE

Undersigned counsel certifies that on September 23, 2022, he electronically

filed the foregoing instrument with the Clerk of the Court using the ECF

system, which will send notification of such filing to the ECF participants.

Respectfully submitted,
/s/ *Rejanae M. Brooks*
Rejanae M. Brooks (P87501)
Attorney for Petitioner
National Appellate Clinic, LLC 24293
Telegraph Rd.
Southfield MI 48033

Dated: September 23, 2022

50