

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION



FILED

MAY 2 1 2024

CLERK'S OFFICE
U.S. DISTRICT COURT
EASTERN MICHIGAN

DEANDRE ALBERT MARTIN,

        Case No. 2:22-cv-12260

    Petitioner,        Hon. Linda V. Parker

v.

MICHAEL BURGESS,

    Respondent.

_____/

## PETITIONER DEANDRE ALBERT MARTIN'S MOTION FOR RELEASE ON BOND PENDING RESOLUTION OF HABEAS PETITION BASED ON INNOCENCE

### *MOTION*

**NOW COMES** Petitioner **DEANDRE ALBERT MARTIN** ("Petitioner"),

by and through the undersigned, and seeks release on bond pending the resolution

of these habeas proceedings based on Petitioner's legal innocence pursuant to

*Dotson* v. *Clark*, 900 F.2d 77, 79 (6th Cir. 1990). A brief in support follows:

1

## *BRIEF IN SUPPORT*

The Sixth Circuit has held to obtain release from custody during the pendency of a habeas corpus petition, a prisoner must "show not only a substantial claim of law based on the facts surrounding the petition but also the existence of 'some circumstance making [the motion for bail] exceptional and deserving of special treatment in the interest of justice.'" *Dotson* v. *Clark,* 900 F.2d 77, 79 (6th Cir. 1990) (alteration in original) (quoting *Aronson* v. *May,* 85 S. ct. 3, 5, 13 S. Ed. 2d 6 (1964) (Douglas, J., in Chambers)). *Accord Puertas* v. *Overton,* 272 F. Supp. 2d 621, 630 (E.D. Mich. 2003).

In the case *sub judice*, Petitioner seeks relief on the basis of several meritorious substantive constitutional claims of error:

### I.

**Trial court counsel's wholesale failure to interview any of the prosecution's civilian, expert or law enforcement witnesses' amounts to a complete failure to meaningfully investigate and this precluded counsel from subjecting the prosecution's case to meaningful adversarial testing.**

This claim as conceded by the State is supported by "trial counsel['s] acknowledg[ment that] he did not personally interview any of the prosecution witnesses." (*See* State's Answer, ECF #8, pg. ID 207) (quoting Amended Habeas Petition, ECF #5, pg. ID 154). Clearly established precedent proves that a

2

fundamental aspect of counsel's responsibility is to investigate and interview witnesses. *See Porter* v. *McCollum*, 558 U.S. 30, 39 (2009). By trial court counsel's own admission, he completely failed to interview any witnesses. The Supreme Court has stressed that the adversarial "testing process generally will not function properly unless defense counsel has done some investigation into the prosecution's case[.]" *Kimmelman* v. *Morrison*, 477 U.S. 364, 415-416 (1986).

The Sixth Circuit has held that "courts are generally reluctant to accept something as stark as not investigating[.]" *Phillips* v. *White*, 851 F.3d 567, 579 (6th Cir. 2017). A complete failure to investigate warrants the presumption of prejudice pursuant to *United States v. Cronic*, 466 U.S. 648 (1984). The Sixth Circuit in *Carter* v. *Bell*, 218 F.3d 581 (6th Cir. 2000), held that counsel's "complete failure to investigate" permits the presumption of prejudice pursuant to *Cronic Id.* at 595 (citing *Rickman v. Bell*, 131 F.3d 1150 (6th Cir. 1997)) ("the complete failure to investigate is below an objective standard of reasonable and may in fact be so severe as to permit us to infer prejudice.").

The facts in this case are clear—Petitioner's trial court counsel failed to even investigate and interview any prosecution or defense witness. The law is even more clear—basic preparation requires interviewing witnesses. This claim meets the criteria of being substantial because it has merit. *See Lagrone* v. *Parrish*, 2023 U.S.

App. LEXIS 20470, at *5 (6th Cir. Aug 7, 2023)) ("A substantial claim is one that has some merit.").

II.

**Petitioner suffered a complete deprivation of counsel from February 1, 2018, to February 8, 2018, which was after the commencement of the judicial proceedings and during the critical pretrial investigative stage of the proceedings; therefore, automatic reversed is mandatory.**

This claim is meritorious because as the State concedes "there was a one-week gap between when Martin's first counsel withdrew and new counsel was assigned[.]" (*See* State's Answer, ECF #8, pg. ID 216). This is a confession that Petitioner suffered a complete deprivation of counsel for an entire seven (7) day period—after the initiation of the judicial proceedings. Precedent is clear, a criminal defendant "requires the guiding hand of counsel at every step in the proceedings against him." *Powell* v. *Alabama*, 287 U.S. 45, 69 (1932). The seven (7) day period of the complete deprivation of counsel that Petitioner suffered occurred during the critical pre-trial stage of the judicial proceedings. *See Lafler* v. *Cooper*, 132 S. Ct. 1376, 1385 (2012) ("The constitutional guarantee applies to pretrial critical stages that are part of the whole course of a criminal proceeding, a proceeding in which defendants cannot be presumed to make critical decisions without counsel's advice."). The Supreme Court has stressed that this period is perhaps the most important. *See Powell*, 287 U.S.at 57 (holding that the pretrial phase is "perhaps the most critical period of the proceedings against these defendants, that is to say, from the time of their

4

arraignment until the beginning of their trial, when consultation, thoroughgoing investigation and preparation were vitally important.").

The Sixth Circuit has made it crystal clear that:

> "[T]he pre-trial period is indeed a critical stage, the denial of counsel during which supports a *Cronic* analysis."
> *Mitchell* v. *Mason*, 325 F.3d 732, 742 (6th Cir. 2003).

The fact that Petitioner was left without counsel for an entire week during the critical pre-trial stage of the case presents a substantial claim of law. *See Lagrone*, 2023 U.S. App. LEXIS 20470, at *5.

## III.

**After the presiding trial court judge reviewed the preliminary examination transcript, obtained Petitioner's criminal history, and learned that Petitioner was on federal parole at the time, he was disqualified from being the trier-of-fact and counsel was ineffective for failing to move to have the trial court judge recused.**

This claim is meritorious because—as conceded by the State—after Petitioner elected to proceeded with a bench trial, the trial court judge "read the preliminary examination transcript when deciding a motion to quash and had been made aware of Martin's criminal history when reviewing a proposed sentence recommendation." (See State's Answer, ECF #8, pg. ID 221). As a matter of law, Petitioner had the right to have another judge assigned to preside over his trial, *see People* v. *Dixson*,

403 Mich 106, 109 (1978) ("If a judge has suppressed inculpatory tangible evidence or a confession, and consulted the preliminary examination transcript in so doing, he might have a duty *sua sponte* to raise the question whether he should sit."), or to withdraw his waiver of counsel altogether, *see People* v. *Wagner*, 114 Mich. App 541, 558-559 (1982) (quoting 47 Am Jr 2d, jury, 567, pp. 684-685) ("As a general rule, and apart from statutes limiting its authority, a court may permit the withdrawal of a waiver of the right to trial by jury or on motion or request, set aside such a waiver, if the request is timely made, unless the waiver has been acted upon.")—but this could have only been accomplished had Petitioner's attorney protected Petitioner's interest by seeking a substitution of the judge or the withdrawal of the waiver of trial by jury. *See Dixson*, 403 Mich at 109 ("the burden of moving to disqualify a judge who had read the preliminary examination transcript should be placed on the defendant.").

In the case *sub judice*, any reasonably competent attorney would have sought to avoid allowing a judge who learned about the client's criminal background, parole status, and who read the preliminary examination transcript—from serving as the trier of fact. This court in *Zimmerman* v. *Davis*, 683 F. Supp. 2d 523 (E.D. Mich. 2009) held that an attorney's failure to protect a client's interest by seeking withdrawal of a jury trial waiver is ineffective assistance of counsel:

6

"Further, petitioner contends that counsel was ineffective for failing to heed his request to withdraw petitioner's jury trial waiver. This allegation, if true, likewise would establish that counsel's performance was deficient. Petitioner does not allege that counsel was ineffective for advising him to waive his right to a jury trial. Such advice is the type of strategic decision which is particularly difficult to attack. *See Walendzinski* v. *Renico*, 354 F. Supp. 2d 752, 757-58 (E.D. Mich. 2005) (Gadolo, J); cf. *Dowell* v. *Bradshaw*, 372 F.3d 821, 837-38 (6th Cir. 2004). Rather, Petitioner contends that regardless of counsel's advice, he determined that he did not wish to waive his jury trial and that he wanted to withdraw his jury trial waiver. Because the right to a jury is a personal right that the defendant himself must waiver; *United States* v. *Diaz*, 540 F. 3d 1316, 1321 (11th Cir. 2008); *see also United States ex rel. Williams* v. *De Robertis*, 715 F. 2d 1174, 1182-83 (7th Cir. 1983), counsel's failure to follow his wishes with respect to the waiver issue, if true, constitutes ineffective assistance of counsel. *Cf. Todd v. Schomig*, 283 F.3d 842, 850 (7th Cir. 2002) (rejecting claim that counsel was ineffective for failing to seek withdrawal of jury waiver not because such a claim would not be viable, but because petitioner failed to show that he in fact asked counsel to withdraw his jury trial waiver). Further, although petitioner had no constitutional right to withdraw his previously valid jury trial waiver *Sinistaj* v. *Burt*, 66 F.3d 804, 808 (6th Cir. 1995), there is no reason to believe that the state court would not have allowed withdrawal of the jury trial waiver as a matter of state law, and every reason to believe that the trial court would have allowed the withdrawal. *See People* v. *Johnson*, no. 253796, 2005 Mich. App LEXIS 729, 2005 W L 602543, at *5 (Mich. Ct. App. Mar. 15, 2005) (defendant may move to withdraw waiver of jury trial where he does so timely and not for purpose of delay); *cf. People* v. *Hamm*, 100 Mich. App. 429, 433, 298 n.w.2d 896, 897-98 (1980) (noting 'the time-honored premise that the right,

and, thus, the stipulation for the waiver of such right should be strictly construed in favor of preservation of that right.').""

*Id.* at 533-534

In the case *sub judice*, Petitioner's claim is meritorious and therefore meets the substantial claim of law criteria. *See Lagrone* 2023 U.S. App. LEXIS 20470, at *5.

## IV.

**The waiver of trial by jury was constitutionally invalid where the record shows Petitioner was misinformed that the burden of proof associated with a trial by jury only required the prosecutor to prove him "guilty" but not guilty beyond a reasonable doubt and the record is silent as to whether Petitioner actually understood the right to trial by jury because Petitioner was never asked if he understood.**

This claim is meritorious too because—as conceded by the State, "the judge did not specify that the jury also had to find him guilty beyond a reasonable doubt." (*See* State's Answer, ECF #8, pg. ID 52). This is not a simple case of the trial court judge failing to provide Petitioner with pertinent information. This is a case of the trial court judge *affirmatively misleading* Petitioner into believing that there were two different kinds of standards and burdens of proof. The trial court judge led Petitioner to believe that the burden of proof for a trial by jury is *mere proof of guilt*—not proof of guilt beyond a reasonable doubt. (*See* Pretrial Hearing Transcript, hereinafter "PHT" ECF#____, Pg. ID _____) (trial court judge telling Petitioner that the jury "would decide whether or not the prosecutor had proven you guilty"). Of course, this is patently inaccurate. *See People* v. *Cook*, 285 Mich. App. 420, 422

8

(2009) (citing U.S. Const. Am VI; const. 1963, art. 1, 20; *People* v. *Beans*, 463 Mich. 623, 629 (2001)).

While the trial court judge told Petitioner that the burden of proof for a trial by jury was mere guilt—the trial court judge told Petitioner that the burden of proof for a bench trial was a higher standard, i.e., guilt beyond a reasonable doubt. (See PHT, ECF # ___, Pg. ID ___) (trial court telling Petitioner if he proceeded with a bench trial he (trial court judge) "would decide whether or not the prosecutor had done her job in proving you guilty beyond a reasonable doubt.") Naturally, Petitioner elected to waive his trial by jury because he was mislead to believe that the burden of proof was *less* burdensome (favorable to the prosecution) for jury trials and *more* substantial regarding bench trials. In order for a jury trial waiver to be valid the court must accurately "inform each defendant of the benefits and burdens of jury trials on the record prior to accepting a proffered waiver." *United States* v. *Martin*, 704 F.2d 267, 274 (6th Cir. 1983) (citing *Witherspoon* v. *United States*, 633 F.2d 1247 (6th Cir. 1980); *Estrada* v. *United States*, 457 F. 2d 255, 257 (7th Cir. 1972); *United States* v. *David*, 511 F.2d 355, 361 (D.C. Cir. 1975); *United States* v. *Mitchell*, 427 F.2d. 1280, 1282 (3rd Cir. 1970); *United States* v. *Idunt*, 413 F.2d 983, 984 (4th Cir. 1969)).

With Petitioner being affirmatively misled regarding the burden of proof applicable to jury trials—the jury trial waiver must be deemed invalid. The Sixth Circuit has held since "the right to a jury trial is a fundamental right, there must be

9

no doubt that any waiver of the right is made knowingly, intelligently and voluntarily. " *Spytma* v. *Howes*, 313 F.3d 363, 370 (6th Cir. 2002) (citing *United States* v. *Martin*, 704 F.2d 267, 372 (6th 1983)). The Sixth Circuit has further stressed that "to be voluntary, knowing and intelligent, the defendant must posses a minimum amount of knowledge concerning his jury trial right[.]" *Ibid.*

Even if it is assumed that the trial court judge had no obligation to explain the burden of proof to Petitioner, *but see Martin*, 704 F.2d at 274 (requiring that a defendant be accurately informed of the "burden of jury trials on the record prior to accepting a proffered waiver.")—once the trial court judge decided to explain the burden of proof, he had an obligation to accurately inform Petitioner and to not affirmatively mislead Petitioner.

Additionally—and a point that the State has not bothered to respond to—the waiver of jury trial cannot be deemed knowingly, intelligently, or voluntarily made where the trial court judge never asked Petitioner whether he actually understood the right to a trial by jury. While the trial court judge asked Petitioner whether the trial court *itself* correctly understood that Petitioner wished to give up his right to trial by jury, the record shows that the trial court utterly failed to ascertain whether Petitioner actually understood the right to trial by jury:

BY THE COURT:

> "Knowing that you have the right to have a jury trial, *am I correct in understanding you wish to give up that right and have the case decided by me without a jury?*
>
> DEFENDANT MARTIN: Yes."

*See* PHT, ECF # ____, pg. ID ____).

While the above reflects that the trial court asked Petitioner "am I correct in understanding you wish to give up" the right to trial by jury and proceed with a bench trial, the record fails to show that the trial court ever asked Petitioner whether he (Petitioner) understood the right to a jury trial. There is a significant legal difference between a trial court judge personally understanding that a Petitioner wished to waive his right and a trial court judge ensuring that a Petitioner accurately understands the right Petitioner seeks to waive. In other words, the question is not what the trial court said or understood—but only what the accused said and understood. *See Akins* v. *Easterling*, 648 F.3d 380, 398 (6th Cir. 2011) (quoting *United States* v. *Erskine*, 355 F.3d 1161, 1169-70 (9th Cir. 2004) ("'The appropriate inquiring is what the defendant understood, not what the court said or understood'") (internal quotation marks omitted). And while the record does reflect that Petitioner confirmed that he wished to waive his right to trial by jury this does not confirm that Petitioner actually understood the right and the inquiring was incomplete without specifically asking Petitioner if he actually understood the right he confirmed he wished to waive. *Cf. Von Moltke* v. *Gillis*, 332 U.S. 708, 724 (1948) ("The fact that

an accused may tell [the judge] that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility.'").

In the case *sub judice*, Petitioner's claim is meritorious and therefore meets the substantial claim of law criteria. *See Lagrone*, 2023 U.S. App. LEXIS 20470, at *5.

## B.

**Newly available scientific evidence proves that exceptional circumstances exist warranting special treatment in the interests of justice.**

Petitioner is deserving of release on bond pending the resolution of this meritorious habeas petition. Newly available scientific evidence not only significantly undermines the truthfulness of the prosecuting witnesses' testimony, but it also demonstrates Petitioner's legal innocence. At trial it was the prosecutor's theory, presented through witnesses, that Petitioner intentionally "raised the gun and shot'" his best friend. (*See* State's Answer, ECF #8, pg. ID 181). But Petitioner testified that "the shooting [w]as an accident" because he and his best friend was "'tussling'" over the gun as "he was holding the gun downward[.]" (*See id.* At 186) (quoting *People* v. *Martin*, No. 344493, 2019 WL 3759849, at * 1-2 (Mich. Ct. App. Aug. 8, 2019))

Forensic Scientist Larry M. Dehus has "conducted" "[a] thorough review and analysis of the Postmortem Report" "regarding Algernon Moore." (*See* Analysis of

Autopsy Report, LST No. 2021-181-10, dated July 12, 2022, attached as Exhibit A).

After such analysis, Dehus concluded, *inter alia,* that:

- "[T]he bullet [that killed Mr. Moore] traveled downward 9 inches in a lateral distance of 12 inches or less. [And that t]his is a significant downward angle of trajectory." (*See* Exhibit A, at page 1, A);

- "[A] close range shot cannot be ruled out." (*See* Exhibit A, at page 1-2, B);

- If "Mr. Moore was standing upright in the standard anatomical position, and considering the significant downward trajectory of the bullet path through his body, the shooter could not have been standing in front of him with his arm outstretched and relatively level when the shot was fired." (See Exhibit A, at page 2, C);

- "At the time of the shot, the barrel of the gun would had to have been held at a height above the entrance wound and at a significant downward angle." (*See* Exhibit A, at page 2, C): and

- The findings are "consistent with the gun discharging during a struggle over the gun." (*See* Exhibit A, at page 2, C).

The above findings prove that the prosecution witnesses were either seriously mistaken when they testified that Petitioner intentionally "raised the gun and shot" his best friend, (*see* State's Answer, ECF #8, pg. ID 181) or that the witnesses intentionally perjured themselves—because the science proves that it was impossible for the gun to have been fired while raised and pointed directly at Petitioner's best friend. While the witnesses painted a picture portraying that after

13

an argument with his best friend, Petitioner intentionally outstretched his arm to "raise the gun" pointing it directly at his best friend before deliberately firing the weapon, (*see* State's Answer, ECF #8, pg. ID 186)(quoting *Martin*, 2019 WL 3759849, at *1-2)—science proves that these witnesses lied. *See Napue* v. *Illinois*, 360 U.S. 264, 269 (1959) (Supreme Court holding that "a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment.").

More importantly, the scientific evidence proves that Petitioner is legally innocent, because the trajectory of the bullet wound demonstrates that the shooting was accidental. (*See* Exhibit A, at page 2, C) (concluding that the trajectory of the bullet wound is "consistent with the gun discharging during a struggle over the gun."). "An accidental killing may prove legal innocence[.]" *Canady* v. *Bryant*, No. 18-6148, at *5 (10th Cir. Jun 19, 2019). The newly available scientific evidence supports Petitioner's (previously unsupported—through corroborating evidence) trial testimony that the shooting was accidental as a result of a struggle over the gun. (*See* State's Answer, ECF #8, pg. ID 186). The newly available scientific evidence would have required the trier of fact to find Petitioner not guilty. *See People* v. *Hess*, 214 Mich. App. 33, 38 (1995) (quoting *People* v. *Morrin*, 31 Mich. App. 301, 310 (1971)) (holding that "a well-established principle in [Michigan] jurisprudence is

that 'homicide is excusable if the death is the result of an accident and the actor is not criminally negligent.'").

Proof that the prosecution relied on perjured testimony and that Petitioner is legally innocent—presents exceptional circumstances warranting special treatment in the interest of justice. Petitioner is deserving of release on bond pending a final resolution of the merits of his habeas petition. A legally innocent habeas petitioner is deserving of release on bond.

## RELIEF REQUESTED

**WHEREFORE**, for the foregoing reasons Petitioner prays that this Honorable Court **GRANT** his motion for release on bond pending resolution of habeas petition based on innocence.

Respectfully submitted,

/s/ *Deandre Albert Martin*

_____

Deandre Albert Martin
MDOC # 831332
Macomb Correctional Facility
34625 26 Mile Road
Lenox Township, MI 48048
Dated: May 16, 2024

# CERTIFICATE OF SERVICE

Petitioner Deandre Albert Martin certifies that on May 16, 2024, the foregoing instrument was mailed to the Clerk of the Court so that the document can be filed using the ECF system, which will send notification of such filing to the ECF participants.

Respectfully submitted,

/s/ *Deandre Albert Martin*

_____

Deandre Albert Martin
MDOC # 831332
Macomb Correctional Facility
34625 26 Mile Road
Lenox Township, MI 48048
Dated: May 16, 2024

# EXIBIT A



# LAW-SCIENCE TECHNOLOGIES INC.

5680 Horseshoe Bend Rd. • Ludlow Falls, Ohio 45339
937-698-3666 • 937-275-7199
Fax: 937-698-7216

Larry M. Dehus, B.S., M.S.
Forensic Scientist

Ben S. Dehus, B.S., CFEI
Fire Investigator

Frederick W. Lickert, B.S., ACTAR
Accident Reconstructionist

Douglas T. Heard
Accident Reconstructionist

July 12, 2022

Mr. DeAndre Albert Martin
MDOC No. 831332
Bellamy Creek Correctional Facility
1727 West D Highway
Ionia, Michigan 48846

Re:     Analysis of Autopsy Report
        LST No. 2021-181-10

Dear Mr. Martin:

Please be advised that I am in receipt of your letter of request and a copy of the Postmortem Examination Report regarding Algernon Moore. I have read your letter of request and will address the questions you posed in that letter. A thorough review and analysis of the Postmortem Report was conducted. As a result of these activities and research, this examiner will offer the following observations and opinions:

A) The entrance bullet hole was described as 24 inches below the top of the head and 1 inch left of the midline. The exit hole was described as 33 inches below the top of the head and 2 inches to the right of the centerline. The bullet is described as passing through soft organs and tissues without striking or being deflected by any bones. This clearly indicates the path of the bullet was front to back, downward, and left to right as described in the report. Mr. Moore was described as being 6 feet 3 inches tall and weighing 190 lbs. He would not have been obese and the estimated thickness of his body in the areas of the bullet path is estimated to be 12 inches or less. Therefore, the bullet traveled downward 9 inches in a lateral distance of 12 inches or less. This is a significant downward angle of trajectory.

B) The Postmortem Report states that "no clothing was received with the body". If further stated that "There was no soot or stippling around the wound". Based upon this, it was further stated that "There was no evidence of close range firing noted on the skin surrounding this wound". Since the clothing was apparently not examined, there is no way of knowing whether or not the shot was

fired at close range. Assuming that a shirt or other clothing article was being worn at the time of the shooting, the evidence of a close range shooting would be on the clothing and soot or stippling would not be on the skin. While this was clearly not a contact wound, a close range shot cannot be ruled out.

C) Assuming Mr. Moore was standing upright in the standard anatomical position, and considering the significant downward trajectory of the bullet path through his body, the shooter could not have been standing in front of him with his arm outstretched and relatively level when the shot was fired. At the time of the shot, the barrel of the gun would had to have been held at a height above the entrance wound and at a significant downward angle. This is consistent with the gun discharging during a struggle over the gun. An analysis of the clothing for gunpowder patterns and testing the hands of both individuals for gunshot residue would have provided definitive evidence regarding this issue,

Please let me know if I can be of further assistance regarding this matter.

Respectfully submitted,

Larry M. Dehus, B.S., M.S.
Forensic Scientist

LMD/kah

Deandre Albert Martin
MDOC # 831332
Macomb Correctional Facility
34625 26 Mile Road
Lenox Township, MI 48048



FRI 17 MAY 2024 PM

Office of the Clerk
United States District Court
231 West Lafayette Blvd., Room #564
Detroit, MI 48226