UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEANDRE MARTIN,

        Petitioner,

v.

MICHAEL BURGESS,

        Respondent.

_____/

CASE NO. 2:22-CV-12260
HONORABLE LINDA V. PARKER
UNITED STATES DISTRICT JUDGE

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING THE MOTION FOR THE APPOINTMENT OF COUNSEL (ECF No. 10), DENYING THE MOTION FOR BOND (ECF No. 11), DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Deandre Martin, ("Petitioner"), confined at the Oaks Correctional Facility in Manistee, Michigan, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, Petitioner challenges his conviction for second-degree murder, Mich. Comp. Laws § 750.317; and felony-firearm possession, Mich. Comp. Laws § 750.227b. For the reasons that follow, the petition is DENIED WITH PREJUDICE.

## I. Background

Petitioner was convicted following a bench trial in the Wayne County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review

1

pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009).

On the evening of September 8, 2017, defendant and Algernon Ladre Moore, Jr. attended a candlelight vigil for Moore's father. Although the vigil was peaceful, defendant was armed with a large handgun that he referred to as a "Draco" gun; the gun was visible to several witnesses. Defendant eventually left the vigil with Moore, Moore's mother Roshawandra McGowan, and McGowan's friend Lakeisha Vance, and went to a gathering at the home of Chardawna Layne (Chardawna), located on Washburn Street in Detroit. Defendant still had the gun at the Washburn location. Several people asked him to put the gun away, but he did not do so.

Chynna Pitts and Chardawna's cousin Alexis Layne (Alexis) also arrived at Chardawna's home that evening in Pitts'[] truck. Pitts parked across the street from the home. Chardawna came outside to speak to Alexis and joined Pitts and Alexis in the truck. They conversed inside the truck until around 2:30 a.m.

At about that time, McGowan and Vance left the Washburn Street house and got into defendant's truck. Defendant and Moore then exited the house; defendant went to the driver's side of the truck where McGowan was seated, and Moore went to the passenger's side where Vance was seated. Moore and Vance conversed, as did defendant and McGowan. The conversation between defendant and McGowan involved how McGowan was going to get home.

At some point, Moore interjected into defendant's and McGowan's conversation; defendant apparently took offense at this, responding, "[Y]ou know, mind your business. Stay out of grown folks' business." Moore came over to the driver's side door and exchanged more words with defendant; Moore and defendant ultimately became involved in a physical altercation. McGowan saw defendant grab Moore's throat, while Vance could only see defendant's hand stretched out toward Moore. Defendant had the gun pointed downward in his other hand. McGowan tried to get out of the truck but could not open the door. McGowan climbed out of the window while telling them to "chill out." McGowan and Vance saw defendant raise the gun and McGowan saw

a flash from the gun. Alexis saw defendant raise the gun up, but she quickly hid underneath Pitts'[] truck for safety. Alexis and Pitts heard a gunshot. Chardawna did not see the gun go off or where the gun was before it went off.

Moore was shot. McGowan and Alexis began performing emergency lifesaving procedures on Moore after McGowan could not find a pulse. Chardawna told defendant, who was still holding his gun, to leave. Defendant walked over to his truck and told Vance to "get out the car." Vance got out of the truck and called 911. Defendant got into the truck and "pulled off real fast." Moore was transported to the hospital, where he was pronounced dead.

Defendant testified at trial and admitted to having a Draco gun on the day in question. He also admitted to drinking four or five cups of vodka that night. He testified that he was holding the gun downward as he and Moore began "tussling," but that Moore grabbed the gun, they began pulling it back and forth, and the gun went off during the struggle. Defendant stated that he did not intend for the gun to go off and did not intentionally put his finger on the trigger; according to defendant, his "finger went to the trigger" because of the pulling back and forth. Defendant characterized the shooting as an accident and claimed not to have known that Moore was shot when he left the Washburn Street location.

After leaving the scene of the shooting, defendant did not call 911. He admitted that he "got rid of" the gun by throwing it "in the street" "[o]ver the freeway" because he did not have a license to carry the weapon.

*People v. Martin*, No. 344493, 2019 WL 3759849, at *1-2 (Mich. Ct. App. Aug. 8, 2019) (second and fourth alteration in original).  Petitioner's conviction was affirmed on appeal.  *See People v. Martin*, 937 N.W.2d 640 (Mich. 2020).

Petitioner filed a post-conviction motion for relief from judgment, which the trial court denied. *See People v. Martin,* No. 17-010562-01-FC (Wayne Cnty. Cir. Ct., Mar. 8, 2021) (ECF No. 9-17.) The Michigan appellate courts denied Petitioner leave to appeal. *See People v. Martin,* No. 358414 (Mich. Ct. App. Feb. 4, 2022), *lv. den.* 974 N.W.2d 193 (Mich. 2022). Petitioner now seeks a writ of habeas corpus on the following five grounds:

> I. Trial court counsel's wholesale failure to interview any of the prosecution's civilian, expert or law enforcement witnesses amounted to a complete failure to meaningfully investigate and did [thus] preclude counsel from subjecting the prosecution's case to meaningful adversarial testing.
>
> II. Petitioner suffered a complete deprivation of counsel from February 1, 2018, to February 8, 2018, which was after the commencement of the judicial proceedings and during the critical pretrial investigative state of the proceedings; therefore, automatic reversal is mandatory.
>
> III. After the presiding trial court judge reviewed the preliminary examination transcript, obtained Petitioner's criminal history, and learned that Petitioner was on federal parole at the time, he was disqualified from being the trier of fact and counsel was ineffective for failing to move to have the trial court judge recused.
>
> IV. The waiver of trial by jury was constitutionally invalid where the record shows Petitioner was misinformed that the burden of proof associated with a trial by jury only required the prosecutor to prove him "guilty" but not guilty beyond a reasonable doubt and the record is silent as to whether Petitioner actually understood the right to trial by jury because Petitioner was never asked if he understood.
>
> V. Petitioner suffered ineffective assistance of appellate counsel and therefore has good cause for failing to raise the constitutional violations now set forth herein on direct appeal.

4

## II. Standard of Review

As amended by the Antiterrorism and Effective Death Penalty Act of 1996

(AEDPA), 28 U.S.C. § 2254(d), imposes the following standard of review for

habeas cases:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the merits
> in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d).  A decision of a state court is "contrary to" clearly

established federal law if the state court arrives at a conclusion opposite to that

reached by the Supreme Court on a question of law or if the state court decides a

case differently than the Supreme Court has on a set of materially indistinguishable

facts.  *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable

application" occurs when "a state court decision unreasonably applies the law of

[the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.

A federal habeas court may not "issue the writ simply because that court

concludes in its independent judgment that the relevant state-court decision applied

clearly established federal law erroneously or incorrectly."  *Id.* at 410-11.  "A state

court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

Petitioner's claims were raised in his post-conviction motion for relief from judgment. In reviewing a claim under the AEDPA's deferential standard of review, this Court must review "the last state court to issue a reasoned opinion on the issue." *Hoffner v. Bradshaw*, 622 F.3d 487, 505 (6th Cir. 2010) (quoting *Payne v. Bell*, 418 F.3d 644, 660 (6th Cir. 2005)). The Michigan Court of Appeals and the Michigan Supreme Court both denied petitioner's post-conviction application for leave to appeal in unexplained one-sentence orders. Accordingly, this Court must "look through" these decisions to the Wayne County Circuit Court opinion denying the motion for relief from judgment, which was the last state court to issue a reasoned opinion. Then, this Court can decide whether that court's adjudication of Petitioner's claims were "contrary to," or "an unreasonable

application of" clearly established federal law as determined by the United States Supreme Court.  *See Hamilton v. Jackson*, 416 F. App'x 501, 505 (6th Cir. 2011).

Although the state court judge procedurally defaulted the claims pursuant to M.C.R. 6.508(D)(3), based on Petitioner's failure to show cause and prejudice for failing to raise these claims on his appeal of right, he also denied the post-conviction claims on the merits.  Thus, the AEDPA's deferential standard of review applies to his opinion.  *See Moritz v. Lafler*, 525 F. App'x 277, 284 (6th Cir. 2013).[1]

### III.  Discussion

The Court discusses Petitioner's claims together for judicial clarity in that they are interrelated and often overlap.

A. Ineffective Assistance of Counsel Claims

Petitioner, in his first claim, argues that he was constructively denied the assistance of counsel because his trial counsel failed to subject the prosecutor's case to meaningful adversarial testing.  He also claims that trial counsel was

---

[1] Respondent urges this Court to procedurally default Petitioner's claims because Petitioner failed to show cause and prejudice, as required by M.C.R. 6.508(D)(3), for failing to raise them on his appeal of right.  Petitioner argues in his fifth claim that appellate counsel was ineffective.  Ineffective assistance of counsel may establish cause for procedural default.  *See Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).  Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of the defaulted claims, it would be easier to consider the merits of the claims.  *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

ineffective for failing to call the medical examiner as a defense witness. He further claims that he was forced into waiving his right to a jury trial because his attorney was unprepared.

In his second claim, Petitioner argues that he was denied the assistance of counsel at a critical stage of the proceedings. In his third claim, Petitioner argues that trial counsel was ineffective for failing to move for the judge to recuse himself from presiding over his bench trial. In his fourth claim, Petitioner claims his jury trial waiver was invalid. Lastly, in his fifth claim, Petitioner argues that appellate counsel was ineffective.

To prevail on his ineffective assistance of counsel claims, a habeas petitioner normally must show that the state court's conclusion regarding these claims were contrary to, or an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984). *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance actually prejudiced the defense. *See Strickland,* 466 U.S. at 687. This standard also applies to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt,* 395 F.3d 602, 617 (6th Cir. 2005).

The United States Supreme Court, however, has clearly established that the complete denial of counsel during a critical stage of a judicial proceeding mandates

a presumption of prejudice.  *See United States v. Cronic*, 466 U.S. 648, 659 (1984).

The existence of certain structural defects in a trial, such as the deprivation of the

right to counsel, requires automatic reversal of the conviction because it infects the

entire trial process.  *See Brecht v. Abrahamson*, 507 U.S. 619, 629-30 (1993).  The

Supreme Court has routinely found constitutional error without any specific

showing of prejudice to a defendant when counsel is either totally absent or

prevented from assisting the accused during a critical stage of the proceedings.  *See*

*Cronic*, 466 U.S. at 659, n.25; *see also United States v. Minsky*, 963 F.2d 870, 874

(6th Cir. 1992).

       The Supreme Court identified three situations where a defendant is entitled

to this presumption: (1) the complete denial of counsel, including situations where

counsel was absent at a critical stage of the proceedings; (2) situations where

defense counsel entirely fails to subject the prosecution's case to meaningful

adversarial testing; and (3) situations where the likelihood that any lawyer, even a

fully competent one, could provide effective assistance is so small that a

presumption of prejudice is appropriate.  *See Fuller v. Sherry*, 405 F. App'x 980,

985 (6th Cir. 2010) (citing *Cronic,* 466 U.S. at 659-60).

i.   <u>Failure to Meaningfully Test the Prosecution's Case</u>

Petitioner, in his first claim, argues that he was constructively denied the assistance of trial counsel because his attorney failed to interview any of the prosecution witnesses prior to trial.

Where defense counsel entirely fails to subject the prosecution's case to "meaningful adversarial testing," there has been a constructive denial of counsel, and a defendant need not make a showing of prejudice to establish ineffective assistance of counsel.  *Moss v. Hofbauer,* 286 F.3d 851, 860 (6th Cir. 2002) (quoting *Cronic,* 466 U.S. at 659).  However, in order for a presumption of prejudice to arise based on an attorney's failure to test the prosecutor's case, so that reversal based on ineffective assistance of counsel is warranted without any inquiry into prejudice, the attorney's failure to test the prosecutor's case "must be complete."  *Bell v. Cone*, 535 U.S. 685, 697 (2002).  The Supreme Court has described *Cronic* as creating only a "narrow exception" to the general rule in *Strickland* that "a defendant who asserts ineffective assistance of counsel must demonstrate not only that his attorney's performance was deficient, but also that the deficiency prejudiced the defense."  *Florida v. Nixon*, 543 U.S. 175, 190 (2004).

The Supreme Court has admonished federal courts to be hesitant before concluding that a state court's failure to apply *Cronic* was contrary to clearly

established law.  *See Woods v. Donald*, 575 U.S. 312, 317 (2015) (holding that

none of the cases cited in *Cronic* as examples of a complete or constructive denial

of counsel "dealt with circumstances like those present here"—namely, counsel's

ten-minute absence during testimony that he had indicated to the court was

irrelevant to his client—and therefore the Sixth Circuit erred in affirming *Cronic*-

based habeas relief); *see also Wright v. Van Patten*, 522 U.S. 120, 125 (2008)

(holding that no Supreme Court precedent "clearly establishes that *Cronic* should

replace *Strickland* in this novel factual context"—an attorney's participation in a

plea hearing *via* speaker phone).

    As another judge in this district has noted, "a failure to interview witnesses

and/or to investigate their version of events . . . is not a 'complete' failure to test

the prosecution's case.  Such an alleged failure thus does not give rise to a

presumption of prejudice under *Cronic*."  *Pouncy v. Macauley*, 546 F. Supp. 3d

565, 632 (E.D. Mich. 2021) (Leitman, J.), *reconsideration denied*, No. 13-cv-

14695, 2021 WL 5494773 (E.D. Mich. Nov. 23, 2021).

    The Sixth Circuit refused to apply the *Cronic* presumption of prejudice to a

claim that defense counsel failed to "conduct any meaningful investigation" and

failed to "interview crucial witnesses."  *Altman v. Winn*, 644 F. App'x 637, 641-42

(6th Cir. 2016).  Another judge in this district has also noted that: "An interview of

prosecution witnesses is only one of several ways that an attorney might prepare

for their trial testimony." *Howard v. Warren,* No. 2:19-cv-10316, 2020 WL
3036328, at *9 (E.D. Mich. June 5, 2020) (Roberts, J.).  The *Cronic* standard
typically does not apply to cases of inadequate pretrial preparation.  *See id.* (citing
*Johnson v. Bradshaw*, 205 F. App'x 426, 432-33 (6th Cir. 2007)).

In the present case, counsel indicated that he believed he could adequately
cross-examine the prosecution witnesses by reviewing their statements to the
police and their preliminary examination testimony.  (ECF No. 5 at PageID. 154.)
Counsel cross-examined the prosecution's witnesses, called Petitioner as a defense
witness, and argued that Petitioner should be acquitted because the shooting was
accidental.  Petitioner failed to show that there is a reasonable likelihood that the
result of his trial would have been different had his counsel interviewed these
witnesses.  Petitioner, in fact, failed to develop any argument to show actual
prejudice, nor has he demonstrated that interviews would have provided any
additional information that his lawyer might have used in cross-examination or that
it would have in any other manner benefitted his defense.  *See Warren*, 2020 WL
3036328, at *9.

Moreover, the cases of *Phillips v. White*, 851 F.3d 567 (6th Cir. 2017) and
*Carter v. Bell*, 218 F.3d 581 (6th Cir. 2000), which Petitioner has cited, do not
stand for the proposition that a mere failure to investigate or interview witnesses
amounts to a constructive denial of counsel.  In *Phillips*, the Sixth Circuit

12

presumed prejudice where, at a capital sentencing proceeding, counsel "neglect[ed] to make an opening statement; fail[ed] to investigate or present evidence, mitigating or otherwise; and offer[ed] a potentially off-putting and self-deprecating remark." *Phillips*, 851 F.3d at 581 (alterations added).  The net effect was that the "sentencing was a presentation by one party, not a contest between adversaries." *Id.*

In *Carter*, the Sixth Circuit found actual prejudice from counsel's deficient performance and did not presume prejudice based upon a failure to investigate or interview witnesses.  *See Carter*, 218 F.3d at 600 (finding prejudice based upon quantity of mitigation evidence that counsel failed to present at capital sentencing); *see also Pouncy*, 546 F. Supp. 3d at 633 ("Pouncy is not entitled to federal habeas relief on his claim that he was constructively denied the effective assistance of counsel when his appointed trial counsel failed to interview the prosecution's witnesses and/or investigate their accounts.").

In the present case, Petitioner was not constructively denied the assistance of trial counsel.  Counsel reviewed the witness statements and their preliminary examination testimony.  He conferred with Petitioner and developed a defense theory.  Counsel brought a motion to quash the information prior to trial and was successful in getting the judge to dismiss the original first-degree murder charge, which carried a mandatory non-parolable life sentence.  *See* Mich. Comp. Laws §

750.316.  Counsel questioned the witnesses at trial, called Petitioner to testify, and made a closing argument in which he advanced an accident defense theory.  In the present case, counsel's alleged errors did not rise to the level of the constructive denial of counsel, because counsel actively represented Petitioner at his trial.  *See Moss,* 286 F.3d at 860-62.

As part of his first claim, Petitioner argues that trial counsel was ineffective for failing to call the medical examiner, Dr. Lokman Sung, to support his defense theory that the shooting was accidental.

Petitioner fails to support this claim.  Petitioner offers only an unsigned affidavit from Dr. Sung.  (ECF No. 5 at PageID. 157-59.)  Other than allegations by Petitioner's state post-conviction attorney in a separate affidavit (ECF No. 9-16 at PageID. 738-40), there is no evidence that Dr. Sung adopted the claims in the unsigned affidavit.  This Court has no way of determining the authenticity of the affidavit.  Because the affidavit was never notarized, it cannot serve as a basis for supporting Petitioner's ineffective assistance of counsel claim.  *See e.g.*, *Clark v. Waller,* 490 F.3d 551, 553, 558 (6th Cir. 2007) (holding that unauthenticated affidavit from person whom petitioner claims should have been called as a defense witness could not support ineffective assistance of counsel claim).  Petitioner is not entitled to relief on his first claim.

14

ii.   <u>Substitution of Counsel</u>

Petitioner, in his second claim, alleges that he was deprived of the assistance of counsel at a critical stage of the proceedings because he was unrepresented by counsel for a week between the time his first attorney withdrew from the case and when he retained a second attorney.

The Sixth Circuit "has held that late appointment or substitution of counsel is not *per se* a denial of effective assistance." *Price v. Perini*, 520 F.2d 807, 808 (6th Cir. 1975) (citing to *Stidham v. Wingo*, 482 F.2d 817 (6th Cir. 1973); *Giacalone v. Lucas*, 445 F.2d 1238 (6th Cir. 1971)). The Supreme Court has declined "to fashion a *per se* rule requiring reversal of every conviction following tardy appointment of counsel." *Cronic*, 466 U.S. at 660 (quoting *Chambers v. Maroney*, 399 U.S. 42, 54, (1970)).

Petitioner's first trial counsel withdrew on February 1, 2018, and substitute counsel was present on February 8, 2018, at the next court hearing. "Where counsel is substituted promptly, there is no impermissible gap in a defendant's representation." *United States v. Bell*, 795 F.3d 88, 95 (D.C. Cir. 2015). Petitioner was never left unrepresented at any hearing. There was only a one-week gap between the withdrawal of his first attorney and the substitution of counsel. Although the identity of counsel changed, at each critical stage a defense lawyer

was present to represent petitioner.  *See id.*  Petitioner is not entitled to relief on his

second claim.

    iii.   <u>Failure to Move for the Recusal of the Bench Trial Judge</u>

Petitioner, in his third claim, alleges that trial counsel was ineffective for

failing to move for the judge to recuse himself from presiding over petitioner's

bench trial because he reviewed the preliminary examination transcript when

deciding Petitioner's motion to quash and had also become aware of Petitioner's

prior criminal history when reviewing a proposed plea and sentencing agreement.

A bench trial judge is presumed to have considered only relevant and

admissible evidence in reaching his or her decision.  *See Harris v. Rivera,* 454 U.S.

339, 346 (1981) (*per curiam*) ("In bench trials, judges routinely hear inadmissible

evidence that they are presumed to ignore when making decisions."); *see also*

*United States v. Joseph,* 781 F.2d 549, 552 (6th Cir. 1986) (stating that "[i]t is well

settled that in a non-jury trial the introduction of incompetent evidence does not

require a reversal in the absence of an affirmative showing of prejudice."); *Brown*

*v. Pitcher,* 19 F. App'x 154, 157 (6th Cir. 2001) (applying the rule to habeas

cases).

There is no indication that the judge considered Petitioner's prior criminal

record or other inadmissible evidence when rendering his verdict.  Petitioner has,

therefore, failed to show that he was prejudiced by counsel's failure to move for

the disqualification of this judge. *See Willis v. Smith,* 351 F.3d 741, 745-46 (6th Cir. 2003) (holding that trial counsel's consent to bench trial before judge who had stated at codefendants' trials that petitioner appeared to be "big guy" in conspiracy to distribute cocaine was not objectively unreasonable, as required to support claim for ineffective assistance); *see also Walendzinski v. Renico*, 354 F. Supp. 2d 752, 758 (E.D. Mich. 2005) (finding that counsel's advice that petitioner agree to bench trial in front of judge who had presided over his pre-trial suppression hearing and co-defendant's jury trial did not prejudice defendant, and thus was not ineffective assistance).

Because a judge is presumed to ignore inadmissible evidence in rendering a verdict, and there is no evidence in this case that the judge considered Petitioner's prior criminal record or other inadmissible evidence in reaching his decision, Petitioner is unable to show that he was prejudiced by counsel's failure to object to seek the judge's disqualification. *See Smith v. Mitchell,* 348 F.3d 177, 206 (6th Cir. 2003); *see also Molina v. Lawler*, No. 08-343, 2008 WL 5054558, at *8-10 (E.D. Mich. Nov. 21, 2008) (holding that trial counsel was not ineffective for failing to request trial judge to recuse herself because of her knowledge of petitioner's federal incarceration).

Moreover, although Michigan law does not permit a judge who is sitting as the trier of fact to review the preliminary examination transcript when it has not

been placed into evidence, *see People v. Ramsey*, 187 N.W.2d 887, 889 (Mich. 1971), the rule in *Ramsey* is inapplicable where a judge merely reads a preliminary examination transcript in connection with a defendant's motion to quash, as was the case here. *See Morgan v. Woods*, No. 08-15069, 2010 WL 5174584, at *9 (E.D. Mich. Dec. 14, 2010) (citing *People v. Dixson*, 267 N.W.2d 423, 425 (Mich. 1978)). There is no indication that the judge considered any testimony from the preliminary examination in rendering his verdict. Accordingly, Petitioner is not entitled to relief on his third claim.

B. Waiver of Jury Trial

In his fourth claim, Petitioner argues that the waiver of his right to a jury trial was invalid because he was misinformed of the burden of proof required for a conviction.  Petitioner specifically alleges that he was not informed that the prosecutor would have to prove him guilty beyond a reasonable doubt at a jury trial.

The burden of demonstrating that a waiver of a jury trial was invalid lies with the defendant who waived it.  *See Sowell v. Bradshaw,* 372 F.3d 821, 832 (6th Cir. 2004).  "[A]lthough recommended, there is no federal constitutional requirement that a court conduct an on-the-record colloquy with the defendant prior to accepting the jury waiver."  *Spytma v. Howes,* 313 F.3d 363, 370 (6th Cir. 2002); *see also Fitzgerald v. Withrow,* 292 F.3d 500, 504 (6th Cir. 2002) (stating that neither an oral colloquy, nor any other particular form of waiver, is required for a valid waiver of jury trial as a matter of federal constitutional law).  Moreover, "[t]echnical knowledge of the jury trial right is not required for waiver to be effective."  *Spytma*, 313 F.3d at 370 (internal quotation omitted).  Most importantly, "there is a knowing and intelligent waiver where the defendant 'understood that the choice confronting him was, on the one hand, to be judged by a group of people from the community, and on the other hand, to have his guilt or

innocence determined by a judge.'" *Sowell*, 372 F.3d at 836 (quoting *United States v. Sammons*, 918 F.2d 592, 597 (6th Cir. 1990)).

Although a criminal defendant may be deemed sufficiently informed to make an intelligent waiver of the right to jury trial if he or she is informed that a jury is composed of twelve (12) members of community; that the defendant participates in their selection; that a jury verdict must be unanimous; and that in a bench trial, the judge, alone, will decide guilt or innocence, such elements are not constitutionally required. *See id.* at 832.

In the present case, the trial court advised Petitioner that he had a right to have a jury decide his case, in which twelve (12) members from the community would hear the evidence and decide whether the prosecutor proved his guilt. The judge explained that he had a right to a trial by the judge without a jury, in which the judge would hear the evidence and determine whether the prosecutor proved Petitioner's guilt beyond a reasonable doubt. The trial court further ascertained that Petitioner wished to relinquish this right and be tried by the court sitting without a jury. The trial court asked Petitioner whether any threats or promises had been made to induce him to waive his right to a jury trial. (ECF No. 9-6 at PageID. 378-80.)

Under these circumstances, the trial court's brief colloquy was constitutionally sufficient. The fact that the judge did not explain to Petitioner that

20

the prosecutor would have to prove Petitioner's guilt beyond a reasonable doubt at a jury trial did not render his waiver invalid. *See United States v. Williams*, 951 F.3d 892, 900 (8th Cir. 2020) (finding that defendant's waiver of his right to a jury trial is valid even if "the district court failed to tell him that the Government must prove his guilt beyond a reasonable doubt"). In addition, Petitioner does not deny that he signed a written waiver of jury form. Courts must give "presumptive force" to written waivers of a jury trial. *Spytma*, 313 F.3d at 371. Finally, the record in Petitioner's case "does not disclose any evidence that petitioner was so unaware of the rudimentary elements of trial by jury that his waiver cannot stand."

While the Sixth Circuit has not defined the "rudimentary elements of a trial by jury," examination of the elements required for a valid waiver, mentioned *supra*, are instructive. *See Sammons*, 918 F.2d at 597 (citing *United States v. Martin*, 704 F.2d 267, 273 (6th Cir. 1983)) ("A defendant is sufficiently informed to make an intelligent waiver if he was aware that a jury is composed of 12 members of the community, he may participate in the selection of the jurors, the verdict of the jury must be unanimous, and that a judge alone will decide guilt or innocence should he waive his jury trial."). Because Petitioner was informed of these elements prior to his waiver, he is not entitled to habeas relief on this claim.

21

C. Ineffective Assistance of Appellate Counsel

Petitioner, finally, alleges that appellate counsel was ineffective for failing to argue the claims raised by Petitioner in his petition.  The Sixth Amendment guarantees a defendant the right to the effective assistance of appellate counsel on an appeal of right.  *See Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985).  Nonetheless, court-appointed counsel does not have a constitutional duty to raise every non-frivolous issue requested by a defendant.  *See Jones v. Barnes*, 463 U.S. 745, 751 (1983).

Petitioner's claims are meritless.  "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'"  *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).  Petitioner is not entitled to relief on his fifth claim.

D. The motion for appointment of counsel.

Petitioner has moved for the appointment of counsel.  There is no constitutional right to counsel in habeas proceedings. *Cobas v. Burgess,* 306 F. 3d 441, 444 (6th Cir. 2002).

Because Petitioner's claims lack any merit, the Court will deny Petitioner's request for the appointment of counsel. *See Lemeshko v. Wrona*, 325 F. Supp. 2d 778, 788 (E.D. Mich. 2004).

E.  The motion for release on bond.

Petitioner moved for release on bond.  In order to receive bond pending a decision on the merits of a habeas corpus petition, a petitioner must show a substantial claim of law based on the facts and exceptional circumstances justifying special treatment in the interest of justice. *Lee v. Jabe*, 989 F.2d 869, 871 (6th Cir. 1993) (quoting *Dotson v. Clark*, 900 F.2d 77, 79 (6th Cir. 1990)); *see also Nash v. Eberlin,* 437 F. 3d 519, 526, n.10 (6th Cir. 2006).  There will be few occasions where a habeas petitioner meets this standard. *Dotson*, 900 F. 2d at 79. Federal courts may grant bail when granting the writ. *See Sizemore v. District Court,* 735 F. 2d 204, 208 (6th Cir. 1984).  By implication, a federal court should not grant bail under other circumstances.  In light of the fact that Petitioner has failed to establish that his claims have merit, he is not entitled to release on bail. *See e.g. Greenup v. Snyder,* 57 F. App'x 620, 621-22 (6th Cir. 2003).

## IV.  Conclusion

The petition for writ of habeas corpus is DENIED WITH PREJUDICE.

The Court denies a certificate of appealability.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the

issues presented were adequate to deserve encouragement to proceed further.  *See*

*Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a

habeas petitioner's constitutional claims on the merits, the petitioner must

demonstrate that reasonable jurists would find the district court's assessment of the

constitutional claims to be debatable or wrong.  *See id.* at 484.  "The district court

must issue or deny a certificate of appealability when it enters a final order adverse

to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. §

2254.

For the reasons stated in this opinion, the Court will deny Petitioner a

certificate of appealability because he failed to make a substantial showing of the

denial of a federal constitutional right.  *See Allen v. Stovall,* 156 F. Supp. 2d 791,

798 (E.D. Mich. 2001).  However, if Petitioner chooses to appeal the Court's

decision, he may proceed *in forma pauperis* on appeal, because an appeal could be

taken in good faith.  *See* 28 U.S.C. § 1915(a)(3).

## V.  ORDER

The Court **DENIES WITH PREJUDICE** the Petition for Writ of Habeas

Corpus and **DENIES** a Certificate of Appealability.   The motions for appointment

of counsel (ECF No. 10) and for release on bond (ECF No. 11) are **DENIED**.

Petitioner is **GRANTED** leave to appeal *in forma pauperis*.

s/ Linda V. Parker  
LINDA  V. PARKER  
U.S. DISTRICT JUDGE

Dated: July 1, 2024

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, July 1, 2024, by electronic and/or U.S. First Class mail.

s/Aaron Flanigan  
Case  Manager